**UNITED STATES of America,**
**Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY,**
**Defendant.**

**No. 66 Civ. 3118.**

United States District Court
S. D. New York.

Aug. 18, 1969.

Edna Lingreen, George J. Luberda, Leonard J. Henzke, Jr., Attys., Antitrust Division, Dept. of Justice, Washington, D. C., for plaintiff.

Sullivan & Cromwell, New York City, by William Piel, Jr., Donald C. Christ, James W. Bowers, New York City, for defendant.

## OPINION

TYLER, District Judge.

Ever since Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), was decided by the Supreme Court, legal scholars have mooted the interesting antitrust question of whether the celebrated case of United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362 (1926), would be decided in the same way under the current state of the law. On these cross motions for summary judgment, counsel for both parties have made a commendable effort to bring that precise issue before the court. I conclude, however, that despite extensive stipulations by counsel which have saved the court much time and effort, the inevitable passage of time has or may have affected the factual situation which existed in 1926, and that at least one critical fact is in substantial controversy, precluding the grant of summary judgment at this juncture.

General Electric Company's ("GE") system of distributing the large lamps it manufactures to the public is well known and has been discussed at length in two prior decisions terminating litigations brought by the government. United States v. General Electric Co., *supra;* United States v. General Electric Co., 82 F.Supp. 753 (D.N.J.1949). The government concedes that the present distribution system "is not significantly different" from the system as it existed at the time of the two earlier litigations, and the parties have stipulated to a description of the particulars of the system. (See Stip. of Facts No. 1.) The central feature of the system, and the one under attack here, is that GE sets the price at which a large volume of its lamps is sold to the consuming public by its consignees. These lamps are distributed to the public through consign-

ment agreements between GE and otherwise independent businesses—electric power companies, electrical equipment distributors, retail grocery, drug and hardware stores, and others. (See Stip. of Facts No. 1.)

Of crucial significance on these motions is the state of GE's patents on large lamps. In 1926 it was apparently undisputed that GE's patents in this area were controlling on the industry. Obviously, the patents then in existence have now expired. It has been stipulated in this case that since 1955 GE has applied for and received 250 patents in the large lamp field. The record, however, is barren of information as to the effect these or other current GE patents have on the production and sale of various types of large lamps by other electrical manufacturers. Significantly, the government has conceded, for purposes of its own motion for summary judgment only, that GE's patents are controlling in the large lamp area.

## I.

### The Simpson Case

Since my conclusion that summary judgment can be granted to neither party is grounded in large part on my reading of the *Simpson* case, it will be helpful to examine that decision in relevant part. Simpson, a gas station operator selling for Union Oil, claimed that Union Oil had violated the Sherman Act by enforcing a resale price maintenance system of distributing unpatented gasoline. He claimed to have been injured by the cancellation of his one year lease and consignment agreement which had come about because of his pricing at rates different from those set by Union Oil.

The gasoline was distributed through consignment agreements with individual station operators. The Court assumed that the consignment arrangements were valid between the parties as a matter of state law, but stated that "a consignment, no matter how lawful it might be as a matter of private contract law, must give way before the federal antitrust policy." 377 U.S. at 18, 84 S.Ct. at 1055. The Court's legal conclusion is instructive here:

" * * * When, however, a 'consignment' device is used to cover a vast gasoline distribution system, fixing prices through many retail outlets, the antitrust laws prevent calling the 'consignment' an agency, for then the end result of United States v. Socony-Vacuum Oil Co., *supra* (310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129), would be avoided merely by clever manipulation of words, not by differences in substance. The present, coercive 'consignment' device, if successful against challenge under the antitrust laws, furnishes a wooden formula for administering prices on a vast scale." [Footnotes omitted.] 377 U.S. at 21–22, 84 S.Ct. at 1057.

The important feature of the case for our purposes is the manner in which the Court differentiated Union Oil's system from the GE system before the Court in 1926:[1]

" * * * Union Oil correctly argues that the consignment in [*General Electric*] somewhat parallels the one in the instant case. The Court in the *General Electric* case did not restrict its ruling to patented articles; it, indeed, said that the use of the consignment device was available to the owners of articles 'patented or otherwise.' *Id.*, at 488 [47 S.Ct. 192, 71 L.Ed. 362]. But whatever may be said of the *General Electric* case on its special facts, involving patents, it is not apposite to the special facts here.

The Court in that case particularly relied on the fact that patent rights have long included licenses 'to make, use and vend' the patented article 'for

1. At 377 U.S. 23, n. 10, 84 S.Ct. 1051, the Court set out several minor differences between the two systems, but these differences apparently did not control the result.

any royalty or upon any condition the performance of which is reasonably within the reward which the patentee by the grant of the patent is entitled to secure.' *Id.*, at 489 [47 S.Ct. at 196, 71 L.Ed. 362]. * * *

\* \* \* \* \* \*

The patent laws which give a 17-year monopoly on 'making, using, or selling the invention' are *in pari materia* with the antitrust laws and modify them *pro tanto*. That was the *ratio decidendi* of the *General Electric* case. See 272 U.S., at 485 [47 S.Ct. at 192, 71 L.Ed. 362]. We decline the invitation to extend it." [Footnote omitted.] 377 U.S. at 22–24, 84 S.Ct. at 1057–1058.

In dissent, Justice Stewart argued that the Court had overruled *General Electric,* despite the language quoted above. He reasoned that the Court in *General Electric* had placed no reliance on the patents there involved to reach the conclusion that the consignment system was lawful, and that, in any event, patents do not confer any greater right to fix prices once the product reaches the normal channels of trade. Since the majority had held in effect that Union Oil had lost the right to control prices on its gasoline once it was consigned, it followed, in Justice Stewart's view, that patented articles could not be so distributed either.

## II.

### *The Government's Motion*

By stipulating that GE's patents presently control large lamp sales, the government purports to present essentially the facts of the 1926 *General Electric* decision to the court on its motion for summary judgment.[2] In effect, the government asks this district court to rule that Justice Stewart's construction of the majority opinion in *Simpson* was correct, and that *General Electric* is no longer the law even on its own precise facts.[3] Assuming *arguendo* that Justice Stewart's conclusion is technically more accurate than the *Simpson* majority's, it remains the duty of the district court to follow the law as stated by the majority.

█ It is plausibly argued by the government that the *Simpson* majority left open the question of whether *General Electric* is still viable, since it merely distinguished the case in the manner already described. But the majority had the opportunity to overrule *General Electric* and specifically failed to do so.[4] Under the circumstances, I must regard the 1926 decision as binding law, at least on its own facts.[5] It thus becomes unnecessary to consider whether the doctrine of *res judicata, stare decisis* or some other principle of judicial economy and orderliness requires this result. The government's motion must be denied.

## III.

### *General Electric's Motion*

In support of its motion for summary judgment, GE argues (1) that the principle of *res judicata* applies because of the two earlier litigations between the same parties concerning its consignment system; (2) that the principle of *stare decisis* requires application of the two earlier rulings to this motion; and (3) that on the undisputed facts, GE's consignment system is lawful under the current state of the law. Since a discussion of the motion on the merits will shed light on the two other arguments, I will treat that issue first, even though

2. Except, of course, as to facts and figures indicating GE's share of the lamp market in the relevant period 1963–65, which, the parties agree, are not crucial on this motion.

3. In addition, the government's motion raises the spectre of GE's claim that *res judicata* bars this suit.

4. 377 U.S. at 22–24, 84 S.Ct. 1051.

5. Again I note that the facts before me on the government's motion are precisely the same as those in the 1926 case.

in strict logic the other two issues might be regarded as prior questions.

GE argues on the merits that *Simpson*, as modified and clarified by United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), requires this court to apply the fabled "rule of reason" to its consignment system of price fixing, and that the record presently before the court demonstrates that the system meets the requirements of that rule. It is important to note that GE's argument assumes that it has no controlling patents in large lamps.[6]

GE reads *Simpson* to hold that only where a consignment price fixing system is coercively employed is it illegal. It reads this approach to be an application of the rule of reason, despite the fact that the opinion contains no direct statement to that effect. Defendant finds support for this conclusion in the *Schwinn* opinion, where the Court applied the rule of reason to determine the legality of territorial and customer restrictions imposed by Schwinn on its consignees. Finally, GE argues that it is uncontroverted that its system is beneficial to the consuming public and that it does not lessen inter-brand competition, and hence meets the tests of the rule of reason.

I have considerable doubt as to the validity of GE's reading of *Simpson* and *Schwinn*. As I understand *Simpson*, the primary question there facing the Court was whether Union Oil's ownership through consignment of its product at the time it passed into the hands of the public immunized its price fixing from antitrust scrutiny on the beguiling principle that an owner may set his terms for sale until the product passes to a new owner. Once the Court answered that question in the negative, it had no difficulty concluding that vertical price fixing on resales by competing consignees was illegal.[7] *Schwinn* clearly supports this view. At several points in the opinion, the *Schwinn* majority cautioned that its application of the rule of reason was dependent upon the absence of price fixing from the case. Perhaps the clearest statement to that effect appears at 388 U.S. 381, 87 S.Ct. 1866:

> " * * * the vertically imposed distribution restraints—*absent* price fixing and in the presence of adequate sources of alternative products to meet the needs of the unfranchised —may not be held to be *per se* violations of the Sherman Act." [Emphasis in the original.]

Although the cautionary language is dictum, when read with *Simpson*, it is dictum of the clearest sort and directly pertinent here.

Accordingly, I reason that absent patents, the price fixing in this case is a *per se* violation of the Sherman Act, and that for this reason alone summary judgment cannot be granted in favor of GE.

But there is an even more important reason why GE's motion must be denied. So far as I can determine from the record, there is a substantial controversy as to the effect of the large lamp patents.[8] In arguing for the application of the rule of reason, GE in effect asks the court to assume that it has no patents controlling large lamps. (See GE brief, p. 56). My second rea-

---

6. See Defendant's Brief, p. 56.

7. Although the Court did not state flatly that this price fixing was a *per se* violation, it said that the antitrust laws would not allow a conclusion that the consignment system was immune from antitrust scrutiny, "for then the end result of United States v. Socony-Vacuum Oil Co., *supra*, would be avoided merely by clever manipulation of words * * *". 377 U.S. at 21–22. 84 S.Ct. at 1057.

8. As stated *infra*, the government makes no concession or stipulation regarding GE's patent position for purposes of GE's motion; moreover, there are no facts in the record about GE's patents except that, as noted, GE since 1955 has applied for and received 250 patents in the field of large lamps.

son for denying summary judgment to defendant rests on what I consider to be a far more likely possibility—that GE has controlling patents on only some of its lamps distributed in this consignment system. If that be the case, and nothing in the record is inconsistent with that possibility, GE might be found to be linking the distribution of unpatented lamps to that of those controlled by patents, since its agency contracts require the agent to stock a variety of large lamps determined by GE.[9] Such patent misuse, if it exists, would be a form of economic coercion, directly relevant in this case, whether or not I am correct in my previous conclusion that the "rule of reason" is inapplicable to this price fixing consignment system.

It should be relatively clear that on my view of the merits of GE's motion, its arguments based on *res judicata* and *stare decisis* fall of their own weight. If GE has either (1) no patents controlling the large lamp industry, or (2) patents controlling some but not all of the lamps distributed, the current factual situation is legally different from that which existed in 1926 and 1949,[10] and the doctrine of *res judicata* cannot possibly apply. In addition, reading *General Electric* in the light of *Simpson,* the former would not even be a controlling precedent given the new factual situation.

## IV.

*Summary*

In short, it is my conclusion that the patent position of GE in large lamps is or may be crucial. Accordingly the motions of both parties for summary judgment must be denied pending further factual development on that ques-

tion. The excellent stipulations already submitted by counsel give rise to the hope, which, for several reasons, may be forlorn, that this difficult factual issue can be resolved without a full trial.

It is so ordered.

---

9. I am well aware that the complaint does not allege a "tying" violation under the antitrust laws. Of course, the complaint could be amended to so allege if such a violation were found on further pretrial factual development, but the analysis in the text is not dependent upon a technical violation.

10. In this connection I note that it is my duty to follow the *Simpson* majority's conclusion that the *ratio decidendi* of *General Electric* depended upon the presence of the controlling patents. 377 U.S. at 24, 84 S.Ct. 1051.