**UNITED STATES of America,**
Plaintiff,

v.

**GENERAL ELECTRIC COMPANY,**
Defendant.

No. 66 Civ. 3118.

United States District Court,
S. D. New York.

May 8, 1973.

Edna Lingreen, George J. Luberda, Leonard J. Henzke, Jr., Attys., Antitrust Division, Department of Justice, Washington, D. C., for the United States.

Sullivan & Cromwell, New York City, by William Piel, Jr., Donald C. Christ, James W. Bowers, New York City, for defendant.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

This civil antitrust action is brought by the United States of America under Section 4 of the Sherman Act, 15 U.S.C. § 4. The defendant General Electric Company (G.E.), a leading manufactur-

er of so-called "large lamps," [1] through a consignment agency system of marketing which it has used for more than 60 years, sets the price at which such lamps are to be sold by its agents. The Government alleges that this constitutes a per se violation of Sections 1 and 3 of the Act (15 U.S.C. §§ 1, 3). The complaint seeks a declaratory judgment to that effect and injunctive relief against continuation of such conduct in the future. The Government has moved for summary judgment pursuant to Rule 56, F.R.Civ.P.

The issues in this case concern the viability and effect of United States v. General Electric Co., 272 U.S. 476, 47 S. Ct. 192, 71 L.Ed. 362 (1926) and United States v. General Electric Co., 82 F. Supp. 753 (D.N.J.1949). [2] In each of those cases the Government attacked G. E.'s large lamp agency marketing system, which was not significantly different from the system which G.E. now uses. In the 1926 case the Supreme Court held that the G.E. system did not violate the Sherman Act. The 1949 decision of the District Court of New Jersey to the same effect was based on the 1926 Supreme Court case. The Government did not appeal from the 1949 decision. [3]

In 1926 G.E. had a controlling patent position in large lamps. It did not have such a position in 1949, nor does it now.

The Government contends that subsequent Supreme Court cases, notably Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), have changed the law as stated in the 1926 and 1949 General Electric cases and, in effect, overruled them. It asserts that the prior cases are no longer binding or controlling and that under the law as it now stands the G.E. consignment agency marketing system in large lamps must be struck down as violative of the Sherman Act.

G.E., in turn, contends that the prior General Electric cases are still the law and are *stare decisis;* that, in any event, these adjudications are a bar as to all the issues in this case under the doctrine of res judicata and, finally, that no per se violation of the Sherman Act has been shown but that the rule of reason must be applied, which raises triable issues requiring the denial of the motion for summary judgment.

A previous motion for summary judgment by the Government, and a cross motion for summary judgment by G.E., both were denied by Judge Tyler. United States v. General Electric Co., 303 F. Supp. 1121 (S.D.N.Y.1969). Judge Tyler found that the question of whether or not G.E. had a controlling patent position in large lamps at the present time was or might be crucial to the case. He was of the view that if G.E. did have such a controlling patent position, the 1926 G.E. decision was dispositive of the case. However, if G.E. did *not* have such a controlling patent position, then G.E. was engaging in price fixing in per se violation of the Sherman Act under *Simpson* and United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). Judge Tyler's denial of both motions was on the ground that the stipulated facts before him did not show whether or not G.E. now had such a controlling patent position and that therefore summary judgment could not be granted to either party.

The parties have since expressly stipulated that General Electric no longer has a controlling patent position in large lamps and the patent question raised by Judge Tyler has thus been removed from the case. The Government has renewed

---

1. "Large lamps" is the commonly accepted trade term embracing most kinds of electric lamps used for household and other interior lighting purposes, including the familiar incandescent "light bulbs," fluorescent "tubes" and certain high intensity discharge lamps.

2. *See also* United States v. General Electric Co., 115 F.Supp. 835 (D.N.J. 1953) (opinion on judgment).

3. A similar third case in the District of New Jersey was concluded in 1954 by a consent decree in favor of G.E. on the consignment lamp agency issue.

its motion for summary judgment on the record as so revised.

All of the material facts have been stipulated by the parties and are not in dispute.

G.E. is one of the largest, if not the largest, manufacturers of large lamps, which it distributes and sells throughout the country. Its large lamp sales amount to in excess of $150,000,000 annually. About three-fourths of its large lamps are distributed and sold by the consignment agency system challenged here. The remainder are sold outright to non-agent dealers without restriction as to resale price.

Under the consignment agency system, G.E. enters into standard forms of agreements of agency with many thousands of businesses which conduct independent business operations, such as retail hardware, grocery and drug stores, and wholesale electrical or industrial suppliers. The lamps are consigned to these agents by G.E. and G.E. retains title to the lamps until they are sold. Agents are required to sell the lamps at prices set by G.E. and this requirement of the agency contracts is strictly enforced. The agents must account to General Electric and pay for all lamps sold and are liable for all lamps lost, missing or damaged. General Electric assumes all risk of fire, obsolescence and market price decline. It is also stipulated that the agreements between G.E. and its consignee-distributors are genuine contracts of agency under private contract law.

I

The first question is whether the 1926 decision of the Supreme Court in United States v. General Electric Co., *supra*, insofar as it held that price fixing pursuant to genuine contracts of agency under private contract law did not violate the Sherman Act, is still the law or whether that holding has been in effect overruled or so limited as to make it no longer viable. If the 1926 case still represents the law on this subject, then the doctrine of *stare decisis* relied on by G.E. controls, there is nothing further to decide, and G.E. is entitled to judgment. Thus, the 1926 *General Electric* case and the subsequent decisions dealing with this question must be carefully scrutinized.

There were two basic questions presented in the 1926 case. One was the legality under the Sherman Act of the price-fixing agreements pursuant to G. E.'s consignment agency system and the second was the right of G.E., as the holder of the controlling patent position in large lamps, to fix the price at which its licensees could sell. Both questions were decided in favor of G.E.

With respect to the first of these issues, the Court stated:

We are of [the] opinion, therefore, that there is nothing as a matter of principle, or in the authorities, which requires us to hold that genuine contracts of agency like those before us, however comprehensive as a mass or whole in their effect, are violations of the Anti-Trust Act. The owner of an article, patented or otherwise, is not violating the common law, or the Anti-Trust law, by seeking to dispose of his article directly to the consumer and fixing the price by which his agents transfer the title from him directly to such consumer. 272 U.S. at 488, 47 S.Ct. at 196.

The proposition that the genuineness of the principal-agent relationship is determinative of whether or not price fixing by the principal violates the Sherman Act has since been thoroughly eroded. United States v. Masonite Corp., 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461 (1942) pointed the way. In holding that Masonite's *del credere* agency agreements with its competitors were a device for the purpose of fixing prices and therefore violated the Sherman Act, the Supreme Court rejected reliance on the General Electric genuine agency concept:

So far as the Sherman Act is concerned, the result must turn not on

the skill with which counsel has manipulated the concepts of "sale" and "agency" but on the significance of the business practices in terms of restraint of trade. 316 U.S. at 280, 62 S.Ct. at 1078 (footnote omitted).[4]

In Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), the Supreme Court again dealt with this problem. There Simpson, a retail gas station operator, sought damages under the Sherman Act for the refusal of Union to renew the lease of his station, solely because he sold consigned gasoline below the price fixed by Union. Union's retailer-lessees were agents of Union, required to sell only Union's gasoline at prices set by the Company. The District Court held that Simpson had failed to establish that Union's consignment lease program violated the Sherman Act and the Court of Appeals affirmed. The Supreme Court held that an agency relationship, though genuine under private contract law, does not immunize an arrangement by which a supplier controls the prices charged by independent businessmen from the price-fixing prohibitions of the Sherman Act. The Court determined that the public policy expressed in the antitrust laws was preeminent and held that Union's scheme of distribution constituted price fixing and was, therefore, a per se violation of the Sherman Act. In so holding, the court expressly pointed out that, despite the similarities between the consignment system used by Union Oil and the system used by G.E. in 1926, the *Union Oil* case was not controlled by the 1926 *General Electric* decision:

> Union Oil. correctly argues that the consignment in [*General Electric*] somewhat parallels the one in the instant case. The Court in the *General Electric* case did not restrict its ruling to patented articles; it, indeed, said that the use of the consignment device was available to the owners of articles "patented or otherwise." [272 U.S. at

488, 47 S.Ct. 192.] But whatever may be said of the *General Electric* case on its special facts, involving patents, it is not apposite to the special facts here.

> The Court in that case particularly relied on the fact that patent rights have long included licenses "to make, use and vend" the patented article "for any royalty or upon any condition the performance of which is reasonably within the reward which the patentee by the grant of the patent is entitled to secure." *Id.*, at 489, 47 S. Ct. 192, at 196, 71 L.Ed. 362.

> \* \* \*

> The patent laws which give a 17-year monopoly on "making, using, or selling the invention" are *in pari materia* with the antitrust laws and modify them *pro tanto*. That was the *ratio decidendi* of the *General Electric* case. See 272 U.S. at 485, 47 S.Ct. 192, 71 L.Ed. 362. We decline the invitation to extend it. 377 U.S. at 22–24, 84 S.Ct. at 1058. (footnote omitted).

Thus, the Court limited the 1926 *General Electric* decision to the proposition that the G.E. consignment agency system did not violate the Sherman Act when used by a manufacturer who held controlling patents, but not otherwise. *Accord*, Sun Oil Co. v. FTC, 350 F.2d 624, 635 (7th Cir. 1965), cert. denied, 382 U.S. 982, 86 S.Ct. 559, 15 L.Ed.2d 473 (1966).

Justice Stewart, dissenting in *Simpson*, was of the view that the consignment agreements used by Union Oil and G.E. were virtually indistinguishable and that the distinction of the *General Electric* case made by the Court on the ground that the underpinnings of *General Electric* rested on G.E.'s controlling patent position was "specious". After analyzing the *General Electric* opinion, he stated, "It is clear therefore, that the Court today overrules *General Electric*." 377 U.S. at 29, 84 S.Ct. at 1061.

---

4. *See also* United States v. Richfield Oil Corp., 99 F.Supp. 280 (S.D.Cal.1951), aff'd per curiam, 343 U.S. 922, 72 S.Ct. 665, 96 L.Ed. 1334 (1953).

Judge McLean of this Court said in Lyons v. Westinghouse Electric Corp., 235 F.Supp. 526, 535 (S.D.N.Y.1964), whether the holding of the *Simpson* Court "amounts to overruling General Electric or merely limiting it is a matter of semantics. The practical effect is the same, whichever word one uses. I cannot escape the conclusion that where no controlling patents are present, the rule laid down in General Electric, at least for the future, is no longer law." [5] Whatever doubt there may have been as to whether the controlling patent position of G.E. was the *ratio decidendi* of the 1926 case no longer exists, for Supreme Court has said that it was and its statement is binding.

The elements of the Union Oil consignment system on which the *Simpson* Court relied in holding that the Union Oil price-fixing arrangements violated the Sherman Act were present in the G. E. consignment agency system before the Court in the 1926 *General Electric* case and are present in the case at bar. In these respects, the systems largely parallel one another.

The first element relied on in *Simpson* was the fact that the Union Oil dealers were independent businessmen, having "all or most of the indicia of entrepreneurs, except for price fixing." 377 U. S. at 20, 84 S.Ct. at 1056. In fact, if the degree of independence is of significance, the G.E. agents have more independence than the Simpson dealers had. The G.E. agents are retailers, wholesalers or contractors, with independent businesses, dealing in a variety of goods and services in addition to the inventories they maintain of G.E.'s large lamps.[6]

The second element relied on in *Simpson* was the scope of the distribution system and the large number of retail outlets involved.

[A]n owner of an article may send it to a dealer who may in turn undertake to sell it only at a price determined by the owner. There is nothing illegal about that arrangement. When, however, a "consignment" device is used to cover a vast gasoline distribution system, fixing prices through many retail outlets, the antiturst laws prevent calling the "consignment" an agency, for then the end result of United States v. Socony-Vacuum Oil Co. [310 U.S. 150, 60 S.Ct. 811, 84 L. Ed. 1129 (1940)] would be avoided merely by clever manipulation of words, not by differences in substance. 377 U.S. at 21–22, 84 S.Ct. at 1057 (footnote omitted).

In *Simpson*, the distribution system comprised some 4,000 retail stations, in only half of which was there a lessor-lessee relationship with Union Oil. G.E. has in excess of 40,000 large lamp agents and its market share in large lamps approximates 50% of the total large lamp market. This is a "vast distribution system" in any sense of the phrase.

In addition, the *Simpson* court laid some stress on the coercive aspects of the Union Oil price maintenance system, saying:

We made clear in United States v. Parke, Davis & Co., 362 U.S. 29, 80

---

5. *See also* C.B.S. Business Equipment Corp. v. Underwood Corp., 240 F.Supp. 413, 424–425 (S.D.N.Y.1964).

6. Consignees who maintain inventories, unlike ordinary salesmen of the manufacturer,

from the customer's point of view, look and act like ordinary merchants. They operate stores or other establishments. They not only "sell" the goods to customers, but they maintain an inventory, provide storage, arrange for delivery into the customer's possession, and often

supply service, repair and financing facilities. If the customer has a recognized interest in price competition between dealers in the manufacturer's brand, he will have the same interest if the manufacturer-dealer relation takes the form of consignment. It was recognition of this functional interest in competition among consignees which underlay the result in *Simpson*. Rahl, Control of An Agent's Prices: The Simpson Case—A Study in Antitrust Analysis, 61 Nw.U.L.Rev. 1, 15 (1966).

S.Ct. 503, 4 L.Ed.2d 505, that a supplier may not use coercion on its retail outlets to achieve resale price maintenance. We reiterate that view, adding that it matters not what the coercive device is. 377 U.S. at 17, 84 S.Ct. at 1054.

It is true that the penalty for failure of G.E. agents to adhere to the G.E. price maintenance schedule may not be as severe as the threat of eviction from their business premises which hung over the heads of Union Oil retailer-lessees. But this is not to say that the G.E. consignment agents are not under coercion to maintain the price schedules set by G.E. It is stipulated that the price maintenance provisions of the G.E. agreements are strictly enforced and if not obeyed the agency agreement will be terminated. The termination of an agency relationship with G.E., which has roughly 50% of the large lamp market, and the consequent inability of the agent to offer G.E. lamps for sale to his customers could plainly have serious business consequences to both a retailer-agent and a wholesaler-agent. This is plainly a coercive device used to achieve price maintenance and "it matters not what the coercive device is." 377 U.S. at 17, 84 S.Ct. at 1055.[7]

Thus, when a consignment agency distribution system under which prices are fixed by the supplier contains the elements present in both *Simpson* and 1926 *General Electric*, *Simpson* holds that there is a violation of the Sherman Act. *General Electric* held that genuine contracts of agency, "however comprehensive as a mass or whole in their effect," 272 U.S. at 488, 47 S.Ct. at 196, under which the prices to be charged by the agents are fixed did not violate the Sherman Act; that proposition is no longer the law.

G.E. relies on United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct.

1856, 18 L.Ed.2d 1249 (1967) to support its contention that use of a consignment agency system of distribution under which prices are fixed by the manufacturer is not a per se violation of the Act but must be evaluated on a case by case basis under the rule of reason. It takes the position that *Schwinn* demonstrates that this is all that *Simpson* actually held. G.E.'s reliance on *Schwinn* is misplaced.

In *Schwinn* vertical restrictions by the manufacturer as to territory and dealers were under challenge. The Court pointed out that the district court had rejected the charge of price fixing. 388 U.S. at 367, 87 S.Ct. 1856. The Court observed that "the issue of unlawful price fixing was tendered, litigated, decided against the appellant, and appellant has not appealed. If it were otherwise—if there were here a finding that the restrictions were part of a scheme involving unlawful price fixing, the result would be a per se violation of the Sherman Act." 388 U.S. at 373, 87 S.Ct. at 1862.

Citing *Simpson*, the Court further said,

Where the manufacturer retains title, dominion, and risk with respect to the product and the position and function of the dealer in question are, in fact, indistinguishable from those of an agent or salesman of the manufacturer, it is only if the impact of the confinement is "unreasonably" restrictive of competition that a violation of § 1 results from such confinement, *unencumbered by culpable price fixing*. Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). 388 U.S. at 380, 87 S.Ct. at 1866. (emphasis added).

Thereafter the Court again pointed out that it is only *"absent price fixing"* that vertically imposed distribution restraints

---

7. This is assuming that a finding of coercion is necessary before a vast distribution system which maintains fixed price schedules can be held to violate the Sherman Act. The Seventh Circuit has concluded that even absent coercion such vertical price control is unlawful. Sun Oil Co. v. F.T.C., 350 F.2d 624, 636 (7th Cir. 1965), cert. denied, 382 U.S. 982, 86 S.Ct. 559, 15 L.Ed.2d 473 (1966).

are not per se violations of the Sherman Act. 388 U.S. at 381, 87 S.Ct. 1856.

*Schwinn,* far from holding that the rule of reason should be applied where there are vertical restraints which involve price fixing, clearly indicates the contrary. *Schwinn* makes it clear that in such a case there is a per se violation of the Sherman Act.

■ Thus, it is plain that the 1926 *General Electric* case, and the 1949 *General Electric* case in the District Court of New Jersey, are not *stare decisis* on the issues in the case at bar, as G.E. contends, and the law as there enunciated does not govern this case. The law applicable now is that laid down in *Simpson*—that a vast consignment agency system of distribution through independent business men, such as we have here, under which there is price fixing by the supplier, is a per se violation of the Sherman Act.

## II

I turn, then, to G.E.'s defense of res judicata.

To sustain that defense, G.E. relies on the three prior cases brought by the Government attacking its consignment lamp agency system under the antitrust laws. These cases were: the 1926 Supreme Court decision in favor of G.E., the 1949 decision of the District Court of New Jersey in favor of G.E., based on the 1926 case, and another case in the District Court of New Jersey in which a consent decree was entered in 1954 which was in favor of G.E. on the consignment lamp agency issue.

■ In considering the res judicata defense in this case, it is important to bear in mind the distinction between the res judicata doctrine relied upon by G.E. and the doctrine of collateral estoppel. When a second suit between the same parties is brought on the same cause of

action, if the prior judgment was on the merits it is ordinarily a complete bar to the second action. This is the doctrine of res judicata as that term is used here.[8] On the other hand, if the second suit between the same parties is on a different cause of action, only those issues actually litigated and determined in the first action are conclusive in the second. This is the doctrine of collateral estoppel. See, e. g., Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); Tait v. Western Maryland Ry., 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405 (1933); Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1877). Moreover, collateral estoppel is confined to situations where the matter raised in the second suit is identical in all respects with that determined in the prior action and where the controlling facts and applicable legal principles remain unchanged. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 599–600, 68 S.Ct. 715, 92 L.Ed. 898 (1947); Tait v. Western Md. Ry., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405 (1933).

The stipulation of facts entered into by the parties in the case at bar states that G.E.'s "method of distributing large lamps through agents . . . is not significantly different from the method of distribution before the Courts in United States v. General Electric Co., 272 U.S. 476 [47 S.Ct. 192, 71 L.Ed. 362] (1926) and United States v. General Electric Co., 82 F.Supp. 753 (D.N.J. 1949)."

Thus, G.E. contends that the cause of action sued upon in the present case is the same cause of action on which judgments were rendered in its favor in the prior suits, and that the doctrine of res judicata that a judgment on the merits is an absolute bar to a subsequent suit between the same parties upon the same cause of action therefore applies. It urges the present action must be dismiss-

8. These are the definitions adopted in Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). "The term *res judicata* is used broadly in the Restatement [of Judgments] to cover merger, bar, collateral estoppel, and direct estoppel." *Id.* n. 6.

ed as barred by res judicata even though the decisional law which controlled the prior suits has since been significantly changed.

The Government, on the other hand, contends that where, as here, a subsequent antitrust suit covers conduct during a period subsequent to the former judgment, and the law has changed as to such an important matter of governmental policy as the enforcement of the antitrust laws, the subsequent suit is not barred by the doctrine of res judicata, however it may be defined or applied.

Resolution of the questions posed here requires a delicate reconciliation between two major policies. One policy concerns the responsibility of the courts to apply the antitrust laws so as to avoid the substantial economic evils at which Congress aimed. The other is the policy underlying the res judicata doctrine resting on considerations of the establishment of certainty in legal relations and economy of judicial time and effort.

As I have said, there has been a significant change in the decisional law in an important area of antitrust law enforcement which directly bears on the issues presented here. Whether such a change in the law forcloses the defenses of res judicata or collateral estoppel is not an easy question.

In a somewhat different context, the Supreme Court stated in State Farm Mutual Ins. Co. v. Duel, 324 U.S. 154, 162, 65 S.Ct. 573, 577, 89 L.Ed. 812 (1945):

> [I]t is . . . the general rule that res judicata is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation. 2 Freeman on Judgments (5th ed. 1925) § 713; Blair v. Commissioner, 300 U.S. 5, 9, 57 S.Ct. 330, 81 L.Ed. 465; West Coast Life Ins. Co. v. Merced Irrigation Dist., 9 Cir., 114 F.2d 654, 662; In re Pomeroy, 51 Mont. 119, 151 P. 333; Hurd v. Albert, 214 Cal. 15, 26, 3 P.2d 545.

Whether the Supreme Court intended by that statement to carve out an exception to the doctrine of res judicata as applied to a subsequent suit in the same cause of action may be open to question. The case has been criticized for going too far in that direction. 1B J. Moore, Federal Practice ¶ 0.415 at 2057–58 & n. 32 (2d ed. 1965).

It is, however, unnecessary to rely on the State Farm v. Duel statement as controlling the res judicata question presented here. The res judicata rule that a judgment on the merits is a bar to a subsequent action between the same parties applies *only* where the subsequent action is upon the same cause of action. In the case at bar, as I view it, the cause of action sued upon is not the same but is different from the causes of action sued upon in the prior General Electric cases. The doctrine of res judicata as an absolute bar therefore does not apply here.

In Lawlor v. National Screen Service Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L. Ed. 1122 (1955), a 1949 antitrust suit had been dismissed below on the ground that a 1943 judgment in a prior antitrust suit was res judicata. The courts below had reasoned that because the two suits were based on "essentially the same course of wrongful conduct," the causes of action in both were the same and the res judicata bar therefore applied. The Supreme Court reversed and held that the two suits were not based on the same causes of action and the second suit was therefore not barred by res judicata. The Court said:

> That both suits involved "essentially the same course of wrongful conduct" is not decisive. Such a course of conduct—for example, an abatable nuisance—may frequently give rise to more than a single cause of action. And so it is here. The conduct presently complained of was all subsequent to the 1943 judgment. 349 U.S. at 327–328, 75 S.Ct. at 868. (footnote omitted).

The Court, in further holding that there was no merit to the contention that the

plaintiffs were precluded by their failure in the earlier suit to press their demand for injunctive relief, went on to say,

> Particularly is this so in view of the public interest in vigilant enforcement of the antitrust laws through the instrumentality of the private treble-damage action. Acceptance of the respondents' novel contention would in effect confer on them a partial immunity from civil liability for future violations. Such a result is consistent with neither the antitrust laws nor the doctrine of *res judicata*. 349 U.S. at 329, 75 S.Ct. at 869.

■ G.E. seeks to distinguish *Lawlor* upon the ground that in the second suit there were also additional allegations as to some new acts which it was claimed the defendants had committed since the earlier judgment. But, in my view, this was merely an additional reason why res judicata did not apply. It did not limit the Court's holding that a suit based upon a course of wrongful conduct occurring subsequent to the judgment in the prior suit is not based on the same but on a different cause of action. This reading of *Lawlor* is in accord with the views expressed in Carter-Wallace, Inc. v. United States, 449 F.2d 1374, 1386–1388 (Ct.Cl.1971); Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 421 F.2d 1313 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439 (1971); Cream Top Creamery v. Dean Milk Co., 383 F.2d 358, 363 (6th Cir. 1967); International Rys. of Central America v. United Fruit Co., 373 F.2d 408, 419 (2d Cir.), cert. denied, 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967); 1B J. Moore, Fed-

eral Practice ¶ 0.410[1] at 1155–56, ¶ 0.448 at 4231 (2d ed. 1965). *Cf.* International Paper Co. v. Maddox, 203 F. 2d 88 (5th Cir. 1953).[9]

■ In the case at bar, as in *Lawlor*, the course of conduct complained of occurred subsequent to the judgments in the prior suits. The same public policy considerations against giving a defendant immunity—in fact, perpetual immunity—from liability, for such violations in the future is present here. Here, as in *Lawlor*, while the course of conduct alleged may be a continuing one, the cause of action is not the same but different from that on which the judgments in the 1926 and 1949 actions were rendered.

The holding in *Lawlor* is reinforced by such analogous cases as Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948) and Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937). In *Sunnen* and *Blair* the Court held that tax proceedings between the same parties, involving claims for subsequent years similar to those which were determined in prior proceedings for prior years, were not based on the same cause of action as had been the subject of the prior determination. The Court therefore concluded that while the general rule of res judicata applied to tax proceedings between the same parties, involving the same claim and the same tax year, it did not apply to proceedings involving similar claims for subsequent tax years. Instead, the latter were governed by the narrower rule of collateral estoppel. *See also* United States v. Stone & Downer Co., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927), where

---

9. Engelhardt v. Bell & Howell Co., 327 F. 2d 30 (8th Cir. 1964), while viewing *Lawlor* somewhat differently, is plainly distinguishable from the case at bar. In *Engelhardt* both suits were based on a single breach of contract, only one refusal to deal and only a single transaction.

Vogelstein v. National Screen Service Corp., 204 F.Supp. 591 (E.D.Pa.1962), aff'd, 310 F.2d 738 (3d Cir. 1962), cert. denied, 374 U.S. 840, 83 S.Ct. 1894, 10

L.Ed.2d 1061 (1963), which also took a somewhat different view of *Lawlor*, rested in large measure on a stipulation by which plaintiff agreed to be bound by the results in six other antitrust suits involving the same issues as his later suit.

Insofar as *Engelhardt* and *Vogelstein* differ from the views as to the effect of *Lawlor* expressed here, I do not follow them.

the Court held that a judicial determination as to the proper classification of imported goods under tariff schedules was not res judicata in a subsequent action involving a subsequent importation of identical goods.

In each of these cases, the Court stressed the public interest in the equality of administration of laws enacted by Congress and the danger, if res judicata were rigidly applied, of conferring a permanent preferred position under such laws on a particular litigant with resulting discrimination and injustice. Accord, Grandview Dairy, Inc. v. Jones, 157 F.2d 5, 9 (2d Cir.), cert. denied, 329 U.S. 787, 67 S.Ct. 355, 91 L.Ed. 675 (1946). As will be pointed out later, these considerations are particularly important here.

I therefore hold that the case at bar is not governed by res judicata but by the narrower doctrine of collateral estoppel.[10]

■ It is quite plain that if the decisional law governing the application or enforcement of a statute of general application has been significantly changed since a prior judgment was rendered, relitigation in a second suit of issues determined in the prior suit is not precluded by collateral estoppel. Commissioner of Internal Revenue v. Sunnen, *supra*; Blair v. Commissioner of Internal Revenue, *supra*; 1B J. Moore, Federal Practice ¶ 0.448 (2d ed. 1965); Restatement of Judgments § 70 (1942); Restatement (Second) of Judgments § 68.1(b)(ii) (Tent.Draft No. 1, 1973).

■ As the Court pointed out in *Sunnen,* in such cases collateral estoppel

"must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." 333 U.S. at 599–600, 68 S.Ct. at 720. Collateral estoppel may be inapplicable where a judicial decision intervening between two proceedings has changed the legal atmosphere significantly. Before it can be invoked, "the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment." 333 U.S. at 601–602, 68 S.Ct. at 721.

■ Thus, a subsequent suit between the same parties upon a similar but different cause of action is not barred by a prior judgment where there has been a significant intervening change in the applicable law.

■ These principles should be applied in the case at bar. The policy considerations which dictate such a result are compelling. There can be no doubt of the vital public interest in the fair and evenhanded enforcement of the antitrust laws. G.E.'s competitors in the large lamp field are bound by the antitrust law as it stands today. The Government can enforce that law as to all of them. If the Government is barred from enforcing the law as it now is against G.E. alone, G.E. would be given an unfair and undeserved advantage over its competitors. It would enjoy what would be tantamount to perpetual

---

10. General Electric suggests that even if the 1926 decision of the Supreme Court is not res judicata here, Judge Forman's decision in the 1949 case is. The suggestion is based on the premise that the ground for Judge Forman's decision in the 1949 case was that the 1926 case was res judicata as to the lamp agency issued presented in the case before him.

The record does not sustain G.E.'s premises. What Judge Forman said was:
It now appears that the exposure of the same issue a second time is barred by reason of the rule of res adjudicata.

Whether the decision is induced by that doctrine or estoppel upon the part of the Government to raise the question again or by the precedent created by the 1926 case is immaterial. 82 F.Supp. at 827. Clearly, the 1949 decision did not turn on res judicata, as that term is used here. Apart from this, since the cause of action in the case at bar is different from the cause of action before Judge Forman, a res judicata defense even were it based on a prior holding of res judicata, is not available to G.E. here.

immunity in an area in which the public interest should be paramount and the consuming public would suffer in consequence.

Moreover, private parties aggrieved by the G.E. consignment agency system, since they were not parties or privies to the prior litigations, would not be barred from suit. Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S. Ct. 1309, 6 L.Ed.2d 604 (1961). Were a private party to bring such an action today, based on G.E.'s current course of conduct, G.E. would have to defend it on the basis of the law as it now is, not as it was prior to Simpson v. Union Oil Co., *supra*. It would be anomalous, indeed, if the Government, which is charged with the prime responsibility for the enforcement of the antitrust laws, were barred from taking action while private parties were not barred.

The result of the application of collateral estoppel to the case at bar would furnish just as "fertile [a] basis for litigious confusion" as the application of the doctrine in Commissioner of Internal Revenue v. Sunnen, 333 U.S. at 599, 68 S.Ct. 715, 720. Collateral estoppel was "not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities," *id.*, in the application or enforcement of the antitrust laws.[11]

As the Fifth Circuit stated, res judicata and collateral estoppel

> must be used . . . not as clubs but as fine instruments that protect the litigant's right to a hearing as well as his adversary and the courts from repetitive litigation. In addition, it must be remembered that the use of these doctrines can cloak a party in perpetual immunity and thus possibly protect conduct lasting long past the prior judgment—conduct that the law may grow to abhor.

Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 421 F.2d

1313, 1316 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439 (1971).

■ G.E. stresses its good faith adherence through the years since the 1926 case to the pattern of the consignment agency system held valid there. But this is not a reason for holding the system is still valid. I see no basis for a finding that because G.E. has enjoyed a preferred position under the antitrust laws for many years, its immunity should be made virtually perpetual.

The relief sought by the Government here is prospective only. I see no reason why G.E. should be subject to private treble-damage actions arising from its understandable reliance on the prior determinations in its favor. The decree here should provide that it have prospective effect only. *See* Simpson v. Union Oil Co. (I), 377 U.S. 13, 24–25, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964); Simpson v. Union Oil Co. (II), 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed.2d 13 (1969).

For the reasons that have been stated, I hold that this action is not barred by res judicata or collateral estoppel. It is governed by the law as enunciated in Simpson v. Union Oil Co., *supra*, which is that a consignment agency system, such as this, involving price fixing, is a violation of Sections 1 and 3 of the Sherman Act.

### III

■ G.E.'s final contention is that the Government is not entitled to summary judgment here because the legality of the G.E. consignment agency system is governed by the rule of reason and the legality of the system under that rule presents a triable issue of fact. Price fixing, both vertical, Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911); United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed. 2d 505 (1960), and horizontal, United

---

11. It may be borne in mind that, absent a significant change in the law, the doctrine of collateral estoppel serves the same policies of finality as res judicata. Had there not been a significant change in the law, collateral estoppel would apparently have served that purpose here.

States v. Socony Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); Kiefer-Stewart Co. v. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951), has long been held to be a per se violation of the Sherman Act. *See* White Motor Co. v. United States, 372 U.S. 253, 260, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963). In the light of these cases, it is plain that under *Simpson* price fixing is illegal per se even when, as here, it is coupled with a consignment agency system such as G.E.'s, involving agency agreements valid under private contract law. As has also been pointed out, United States v. Arnold, Schwinn & Co., *supra,* rather than impugning that holding, confirms it.

It is plain that under the stipulation of facts in this case, price fixing is an integral part of G.E.'s consignment agency system. It necessarily follows that the course of conduct complained of by the Government here is illegal per se and violates the Sherman Act.

The Government's motion for summary judgment is therefore granted.

Settle decree on 30 days' notice.

It is so ordered.