## SIMPSON *v.* UNION OIL CO. OF CALIFORNIA

No. 419. Decided October 27, 1969

*Maxwell Keith* for petitioner.

*Moses Lasky* for respondent.

PER CURIAM.

This case represents the aftermath of our decision in *Simpson* v. *Union Oil Co.*, 377 U. S. 13, where we held that a "consignment" agreement for the sale of gasoline, required by Union Oil of lessees of its retail outlets, violated the Sherman Act, 26 Stat. 209, 15 U. S. C. § 1 *et seq.* The case was remanded for a hearing on other issues and for a determination of damages. The last sentence of the Court's opinion stated:

> "We reserve the question whether, when all the facts are known, there may be any equities that would warrant only prospective application in damage suits of the rule governing price fixing by the 'consignment' device which we announce today." *Id.,* at 24–25.

On remand, the District Court interpreted this sentence as an invitation to determine if any "equities" were

present which would warrant precluding the imposition of damages on Union Oil. Its finding was that an application of the rule announced by this Court to the damages action would be unfair, on the ground that the decision in *United States* v. *General Electric Co.,* 272 U. S. 476, gave Union Oil a reasonable basis for believing that its actions were entirely lawful. The Court of Appeals affirmed.

The petition for certiorari presents the question whether in this case the principles we announced in *Simpson* v. *Union Oil Co.* should be made prospective in the present litigation. We grant the petition on that question and deny it on the other questions tendered; and we reverse the judgment below.

We held when the case was here before that on the facts of record the use of the "consignment" device was within the prohibited ban of price fixing for nonpatented articles, 377 U. S., at 16–24, and that "on the issue of resale price maintenance under the Sherman Act there is nothing left to try, for there was an agreement for resale price maintenance, coercively employed." *Id.,* at 24.

The question we reserved was not an invitation to deny the fruits of successful litigation to this petitioner. Congress has determined the causes of action that arise from antitrust violations; and there has been an adjudication that a cause of action against respondent has been established. Formulation of a rule of law in an Article III case or controversy which is prospective as to the parties involved in the immediate litigation would be most unusual, especially where the rule announced was not innovative. Since parties in other cases might be shown to have structured product distribution on quite different considerations, we reserved the question whether in some of those other situations equity might warrant the conclusion that prospective application was the only fair course.

*Reversed.*

MR. JUSTICE BLACK, concurring in part and dissenting in part.

I wholeheartedly concur with the decision of the Court that both courts below were in error in holding that petitioner was not entitled to any damages in this case. I dissent, however, from the Court's denial of certiorari on another question that petitioner raises, the effect of which is to leave standing that part of the District Court's judgment setting aside petitioner's jury verdict as excessive and granting respondent a new trial on the issue of damages.

The District Court's grant of a new trial did not rest upon a finding that any of the evidence on the issue of damages was improperly admitted or that the instructions to the jury were erroneous. The judge granted the new trial on the ground that the $160,000 verdict "is against the weight of the evidence, shocks the conscience, is grossly and monstrously excessive, is the result either of passion and prejudice or of consideration by the jury of factors irrelevant to the litigation, is speculative, conjectural and a miscarriage of justice." Civil No. 37,344 (D. C. N. D. Cal., filed May 23, 1967).

I do not agree that under the facts of this case the verdict should have shocked the court's conscience. Certainly the $160,000 award does not shock my conscience, nor does it seem to me monstrous or the result of passion and prejudice on the part of the jury. Petitioner's growing filling station business was destroyed by respondent through conduct that this Court held to be in violation of the antitrust laws. See Simpson v. Union Oil Co., 377 U. S. 13 (1964). At the time the cause of action arose petitioner's life expectancy was about 25 years. The jury had a right to believe that his business would have grown through those 25 years, and no one can say with any absolute assurance that the jury verdict was in excess of the immediate and long-term returns

he might have realized from his business during that period.

Antitrust damages such as those involved here are bound to be "speculative" and "conjectural" to some extent. When a person wrongfully takes government bonds worth $10,000 on the market, the damages can be precisely measured. But when as here a young man's business is wiped out root and branch by a wrongdoer, the measurement of the victim's damages is not so simple a matter. This is true because no one can infallibly predict how long that business would have continued to grow and flourish or precisely how much the business would have been worth to him in 25 years. But certainly a fair and just legal system is not required by difficulties of proof to throw up its hands in despair and leave the sufferer's damage to be borne by him while the person who did the wrong goes scot free. This Court has refused under such circumstances to hold that our system of justice is so helpless to do justice. In this very antitrust field our Court has specifically and pointedly refused to permit antitrust violators to escape liability for their wrongs on the argument that damages must not be awarded because they are uncertain and speculative. The Court in a ringing opinion by Mr. Chief Justice Stone in *Bigelow* v. *RKO Radio Pictures,* 327 U. S. 251 (1946), emphatically declined to acknowledge such judicial helplessness. There we held that the award of damages for the victim of an antitrust violation must not be denied on the spurious argument that they cannot be proved with the certainty of the value of stolen bonds. In that case this Court said:

"[I]n the absence of more precise proof, the jury could conclude as a matter of just and reasonable inference from the proof of defendants' wrongful acts and their tendency to injure plaintiffs' business, and from the evidence of the decline in prices, profits

and values, not shown to be attributable to other causes, that defendants' wrongful acts had caused damage to the plaintiffs." *Id.,* at 264.

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Id.,* at 265.

*Bigelow* and other cases* clearly establish the rule that the existence of damages in antitrust actions is a question for the jury and that the inherent uncertainty in the amount of damages is to be resolved against the wrongdoer. In my opinion the jury below did exactly what we said it was entitled to do in *Bigelow.* I would therefore require that the jury verdict be reinstated without further ado.

MR. JUSTICE STEWART would deny the petition for certiorari.

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.

---

*\*Perkins* v. *Standard Oil Co. of California,* 395 U. S. 642 (1969); *Continental Ore Co.* v. *Union Carbide & Carbon Corp.,* 370 U. S. 690 (1962).