**Michael LEPORE and Vito Lepore, Plaintiffs,**

v.

**NEW YORK NEWS INC., Defendant.**

No. 72 Civ. 2024.

United States District Court, S. D. New York.

Sept. 28, 1973.

See also, D.C., 346 F.Supp. 755.

**1388**

White, Coch & Robinson, P. C., New York City by Nicholas L. Coch, New York City, for plaintiffs.

Townley, Updike, Carter & Rodgers, New York City by Andrew L. Hughes, Michael S. Belohlavek, New York City, for defendant.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs Michael Lepore and Vito Lepore seek an order preliminarily enjoining the defendant New York News Inc. (the News) from terminating their carrier agreements and from committing other acts of harassment. Before reaching the merits of this particular motion, it is necessary to place it in the context of previous developments both in this case and in a related case.

On May 11, 1972 the plaintiffs filed this action alleging that the News had violated both the Sherman Act and the Clayton Act. Plaintiffs asked for damages and injunctive relief, and on July 21, 1972 Judge Gurfein issued a preliminary injunction.

That injunction which, as modified, is still in effect prevents the defendant from terminating plaintiff Michael Lepore's carrier agreement and from committing other acts of harassment. However, Judge Gurfein's injunction is limited in two ways: first, it protects only the plaintiff Michael Lepore but does not protect the other plaintiff Vito Lepore; and second, it is limited to the Coop City franchise and does not extend to the remaining geographic areas in which plaintiffs operate.

Prior to the issuance of Judge Gurfein's injunction and, indeed, prior to the filing of this suit, thirty-one independent home delivery dealers of the News brought a separate and independent action in which all of the parties in this suit were named as defendants. Bowen v. New York News Inc., 366 F. Supp. 651 (S.D.N.Y., filed August 27, 1973).

On June 29, 1973 Judge Bauman filed an opinion in the *Bowen* case in which he generally upheld the independent delivery dealers' contentions that the News' distribution system violates the federal antitrust laws. In an attempt to explain Judge Bauman's decision to its franchise dealers, the News sent a form letter dated July 13, 1973 to all of its franchise dealers, including both of the plaintiffs in this case. In that letter the News stated: "During the period of the appeal The News will not enforce the fair trade provisions of its contract with you." This letter was of an admittedly provisional nature and explicitly stated that there would be a need for future modifications of the franchise agreement. However, the letter was quite clear and unequivocal in stating that the fair trade provisions of the contract would *not be enforced during* the pendency of the appeal.

In reliance on this letter the plaintiff Vito Lepore, immediately after the presidential price freeze ended on August 12, 1973, raised his prices to his carrier boys in the Bay Shore-Brentwood area. He suggested to these carriers that they, in turn, raise the prices to their customers.

On August 27, 1973 Judge Bauman entered his judgment in the *Bowen* case. That judgment enjoined the defendant News from fixing the price at which wholesalers could resell the papers but the operation of the judgment was

stayed pending the determination of an appeal.

Following the entry of the judgment and its stay, the News on September 5, 1973 sent another letter to all of its franchise dealers. This second letter informed the franchise dealers of the stay in the *Bowen* case and concluded by stating: "For the present we will continue doing business as usual." This represented a change from the News' position in its July 13, 1973 letter.

By this time the News had evidently learned of plaintiff's price increase and it contacted some of plaintiff's customers to verify the increase. On September 12, 1973 John White, Home Delivery Manager of the News, telephoned Vito Lepore and informed him that in view of Judge Bauman's stay in the *Bowen* case the News intended to adhere to the franchise contract and planned to enforce the price restrictions.

On September 14, 1973 plaintiffs brought an order to show cause why the defendant should not be preliminarily enjoined from terminating their carrier agreements and from committing other acts of harassment. Defendant opposed the issuance of the injunction and argument was held on this matter on September 21, 1973 during which the operative facts were stipulated.

■ In order to succeed on this motion the plaintiffs have, under the traditional standards of equity, the burden of proving both a strong likelihood of ultimate success on the merits and irreparable damage if the relief sought is not granted. See, *e. g.*, Gulf & Western Indus. Inc. v. Great Atlantic & Pacific Tea Co., 476 F.2d 687, 692–693 (2d Cir. 1973); National Ass'n of Letter Carriers v. Sombrotto, 449 F.2d 915, 920–921 (2d Cir. 1971). See also ABA, Antitrust Developments: 1955–1968, 94–97 (1968).

As to the first requirement, a strong likelihood of ultimate success, it is clear that the plaintiffs have met their burden. Plaintiffs' suit is based on a claim that the News is violating the federal antitrust laws. Only one month ago Judge Bauman, after a long, careful and thorough study of the entire News distribution system, reached the same basic conclusion. It is hard to imagine a means by which a likelihood of success could be more clearly demonstrated.

As to the second requirement, a showing of irreparable harm, I find that the plaintiffs have also met this burden. If the defendant does in fact terminate the plaintiffs, the plaintiffs will be irreparably harmed. They will have lost their business and their customers and should they eventually succeed on the merits of this case, it may be impossible to reestablish the businesses as going concerns. Such a victory would, indeed, be pyrrhic.

■ That the court has the power to issue an injunction when the termination of a franchise is threatened is quite clear. "Many courts have held that defendants who are or may be guilty of anticompetitive practices should not be permitted to terminate franchises, leases or sales contracts when such terminations would effectuate those practices." Milsen Co. v. Southland Co., 454 F.2d 363, 366 (7th Cir. 1971). This is true even though "the plaintiff had violated the terms of the franchise or sales agreement and had given the defendant a contractual basis for termination." Id. See also Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970); Interphoto Corp. v. Minolta Corp., 295 F.Supp. 711 (S.D.N.Y.), aff'd, 417 F.2d 621 (2d Cir. 1969).

■ While the plaintiffs may be irreparably harmed the defendant, on the other hand, will suffer little or no injury if plaintiffs are allowed to sell the newspapers at a higher price during the pendency of the *Bowen* appeal. At the argument on this motion it was stipulated that the number of customers who have cancelled their subscriptions because of the price increase is seven, certainly not by any measure a significant loss to the News. In fact, the total number of papers sold by the plaintiffs has increased since the price rise.

Defendant argues, however, that it will suffer irreparable harm if the preliminary injunction is issued because the News can not expect its other franchise dealers to adhere to a maximum resale price if the plaintiffs are permitted to impose additional charges. This argument overlooks the fact that since Judge Gurfein's injunction was entered over one year ago the plaintiff Michael Lepore has had the right to impose additional charges in his Coop City franchise. Yet, despite this fact, the other franchise dealers have adhered to the maximum resale price set by the defendant.

Defendant also claims that the relief sought by the plaintiffs is unnecessary, that there is no threat to terminate or harass the plaintiffs. However, the defendant has already filed suit in New York State Court seeking an injunction against the plaintiffs' price rise. Such an act is clear evidence of the defendant's intention to take some action against the plaintiffs.

Finally, both parties are agreed that the traditional function of a preliminary injunction is to preserve the status quo. Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969). Defendant argues that the issuance of a preliminary injunction in this case would violate the status quo. Defendant does not define the status quo but impliedly assumes that the status quo is the situation which existed under the franchise contract before the *Bowen* decision. However, when plaintiff Vito Lepore in reliance on defendant's letter of July 13, 1973 and the *Bowen* decision raised the prices, a new status quo may have been established.

■■ The status quo, as a general rule, is defined as the "last uncontested status which preceded the pending controversy." Westinghouse Elec. Corp. v. Free Sewing Machine Co., 256 F.2d 806, 808 (7th Cir. 1958). However, the Second Circuit has realized that such a definition "cannot be mechanically applied." National Ass'n of Letter Carriers v.

Sombrotto, 449 F.2d 915, 921 (2d Cir. 1971); *Compare* Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204 (2d Cir. 1966). In this case I find the status quo to be the situation as it presently exists, that is, after the plaintiffs' price increase in reliance on the defendant's letter and the *Bowen* decision. Thus, an injunction will issue to protect the status quo as I have defined it to be.

It is my opinion that any litigation which, in essence, is founded on the basic question of the legality or illegality of the entire News distribution system should await the decision of the Second Circuit Court of Appeals in Bowen v. New York News Inc., *supra*. Thus, until such time as that decision is rendered it is hereby

Ordered and adjudged that defendant is,

(a) preliminarily enjoined from terminating its carrier agreement with plaintiffs or stopping deliveries of its newspapers to them because, contrary to the provisions of said carrier agreement, they resell defendant's newspapers at prices higher than the regular established home delivery price fixed by defendant pursuant to the carrier agreement,

(b) required to continue to sell its newspapers to plaintiff Vito Lepore in quantities ordered by him at prices no higher than those charged to all other franchise dealers operating in the Suffolk County area under independent home delivery carrier agreements and

(c) preliminarily enjoined from committing any of the following acts of harassment or reprisal directed toward either of plaintiffs:

(1) contacting any customer of plaintiffs or any of its carriers unless such customer has first called defendant with a complaint;

(2) contacting, intimidating or interfering in any manner with the delivery or activities of plaintiffs' carriers and carrier boys.

So ordered.