**Carol MILLCAREK, Plaintiff,**

**v.**

**The MIAMI HERALD PUBLISHING COMPANY, a division of Knight Newspapers, Inc., a Florida Corporation, and Beth Danow, Defendants.**

**Civ. A. No. 74–1619–Civ–PF.**

United States District Court,
S. D. Florida.

Jan. 7, 1975.

---

Braxton & Sanford, Miami, Fla., for plaintiff.

Sandy D'Alemberte, Steel, Hector & Davis, Miami, Fla., Fisher & Phillips, Atlanta, Ga., for The Miami Herald Publishing Company & Beth Danow.

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

FAY, District Judge.

This cause came before the Court on the plaintiff's Motion for a Preliminary Injunction, and, after hearing testimony of the plaintiff and Carl La Marca, reviewing the memoranda of law from counsel and hearing argument, the Court is prepared to rule. The plaintiff's counsel has made a request for detailed findings of fact and conclusions of law and the Court, pursuant to that request, hereby enters this order. The defendant, The Miami Herald Publishing Company, is referred to herein as Miami Herald.

### FINDINGS OF FACT

The Court makes the following findings of fact:

1. The plaintiff entered a contract with the Miami Herald as a home delivery carrier on June 30, 1973. The contract, entitled "Independent Newsdealer Contract," is attached as Exhibit A to the Complaint. Under this relationship, the plaintiff delivered the Miami Herald newspaper on a designated route.

2. Despite the title of the contract, the facts indicate that the Miami Herald exercised substantial control over the plaintiff and other news carriers. Some

of these facts of control are spelled out in the contract,[1] others are apparent from the day-to-day relationship of the plaintiff with her supervisors.[2]

3. In early November, 1974 there were conversations between the plaintiff and Miami Herald supervisory personnel concerning a business trip that the plaintiff planned to take which would prevent her from delivering the route. The important point was that some one had to locate a substitute for the route and there was some confusion about who would take the responsibility. The plaintiff states that she turned to the Miami Herald to get a replacement, despite the fact that the contract on which she relies makes this her duty. The Court has not heard the defendant's testimony and makes no finding on the justification for plaintiff's decision to leave town without locating a replacement.

4. Whatever the arrangement with the Miami Herald, the plaintiff did not appear on three consecutive days for delivery nor did she provide any replacement. The route was run on November 9, 10, and 11 by persons hired by the Miami Herald.

5. On the Monday evening, November 11, 1974, after the plaintiff returned from her business trip, a Miami Herald representative called her and told her that her contract had been terminated.

6. Mrs. Millcarek sought to be reinstated and visited the Miami Herald offices to discuss that possibility. After several conferences held on November 12 and November 13, 1974 she was informed that she could have her route back under a new contract under which she would clearly be in an employee status. She did not sign the new contract but took it home for study.

7. To place this matter in context, it is now necessary to step back in the chronology and note that Mrs. Millcarek had been asked by the Miami Herald to attend a meeting of home delivery carriers on Saturday, November 9, 1974.

1. Among the factors of control mentioned in the contract itself are the following:

 a. Carrier furnished with names and addresses of subscribers (paragraph A.2 of contract);

 b. Carriers allowed credit for shortages but must report shortages within forty-eight hours (paragraph A.3 of contract);

 c. Paper received advance monies and gave carrier credit (paragraph A.4 of contract);

 d. Carrier must deliver monies for advance subscriptions to the Herald within 48 hours of receipt (paragraph B.1 of the contract);

 e. Carrier must make settlement within 48 hours (paragraph B.2);

 f. Carrier must give paper written notice of any errors in statements (paragraph B.4);

 g. Carrier must deliver papers promptly (paragraph B.7);

 h. Carrier must deliver papers in a dry and readable condition (paragraph B.7);

 i. Carrier agrees to use best efforts to build up list of subscribers (paragraph B.7);

 j. Contract can be terminated with or without cause on 15 days notice (paragraph C.1);

 k. Miami Herald can deliver papers and charge to carrier for delivery to customer where carrier has failed to make satisfactory delivery and customer has requested delivery from the Herald (paragraph C.5).

2. The plaintiff's testimony revealed a substantial number of additional facts which indicated control by the Miami Herald over its home delivery carriers even before there was any conversion of the contracts. These facts are:

 a. The Miami Herald matched Mrs. Millcarek with a territory and arranged for her to get with a particular carrier for turn over of customer records;

 b. Mrs. Millcarek was required to settle accounts with the other carrier although this was negotiated by Mrs. Millcarek without help from anyone from the Miami Herald;

 c. The Miami Herald assisted in obtaining new subscribers;

 d. The Miami Herald has insisted that some carriers serve subscribers even if the carrier wishes to cut the customer off;

 e. Place of pick-up is directed;

 f. Some billing done by the Miami Herald, direct to customer;

 g. The Herald retains some advance payments;

 h. Some supplier furnished by the Miami Herald; and

 i. Time of delivery is apparently specified or strongly suggested with Mrs. Millcarek being told that any time was all right, even if it was as late as 7:30 a. m.

She later learned that the purpose of this meeting was to offer all Miami Herald home delivery carriers in Dade County the opportunity to become employees of the Miami Herald. By taking her business trip, she missed this meeting and had not seen the new contract prior to Wednesday, November 13, 1974. It is apparent from the testimony of the plaintiff's witness, Carl La Marca, that the offer made to convert to employee status was optional, for Mr. La Marca testified that he is still an independent contractor.

8. After Mrs. Millcarek had studied the contract and, apparently, consulted with others, she determined that, because she needed the income, she would sign it although she did not want to do so. She woke up the next morning intending to meet with the Miami Herald supervisory personnel signing the contract, and servicing the route.

9. Again, there was some confusion for Mrs. Millcarek arrived at the drop point and found that the papers for her route had been delivered but she could not locate the supervisory personnel. By the time she had located the proper people, the Miami Herald had hired the defendant Beth Danow as an employee to deliver the route and refused to allow the plaintiff to sign the contract.

10. Since the Court heard only the plaintiff's evidence, these findings are not binding on the defendants and no fault is assigned for the confusion which arose on several occasions.

11. The plaintiff's sole claim for injury in this matter is for money damages.

## CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the Court reaches the following conclusions of law:

Plaintiff's theory is that the activity described above constitutes a violation of Section 1 of the Sherman Act, 15 U.S.C. 1, and entitles her to a preliminary injunction. The claim is that Beth Danow has violated the anti-trust laws by entering into a contract of employment with the Herald and by soliciting home delivery sales of the Herald. The plaintiff's counsel has stated to the Court that the claim against the Miami Herald is justified by its termination of plaintiff's independent contractor status and, thereafter, entering into an employer relationship for distribution of the Miami Herald with Beth Danow.

■ In order to prevail on its motion for preliminary injunction, it is necessary for the plaintiff to meet four tests. They are: (1) The plaintiff has no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) The plaintiff has at least a reasonable likelihood of success on the merits; (3) The balance of hardships tilts toward the plaintiff; and (4) The issuance of a preliminary injunction will serve the public interest. American Family Life Assur. Co. of Col. v. Aetna Life Ins. Co., 446 F.2d 1178 (5th Cir. 1971); Blackshear Residents Organization v. Romney, 472 F.2d 1197 (5th Cir. 1973). An examination of these four factors has led the Court to conclude that the plaintiff has not carried its burden. These factors are:

■■ 1. *Plaintiff has an adequate remedy at law.* This is essentially a contract dispute between the parties and, though there may or may not be a basis for this claim it is not justification for injunctive relief. The Court notes that the contract dispute is over a personal services contract and that all injury claimed by the plaintiff can be remedied with money damages. Courts do not normally enter orders compelling specific performance of personal service contracts, Robinson v. Sax, 115 So.2d 438, 440 (Fla.App. 3d 1959), and where money damages, if justified, can remedy a wrong, equitable remedies are not justified.

■■ 2. *The plaintiff has not demonstrated a reasonable likelihood of success.* The defendant Miami Herald has a right to determine its method of distribution and the fact that the distribu-

tion system is done through employees rather than independent contractors forms no basis for a Sherman Act, Section 1, violation. This statement is not meant to rule on the pending motions to dismiss filed by the defendants nor to foreclose other arguments which plaintiff's counsel may wish to advance. At this time, it is only necessary to speak to the likelihood of the plaintiff's success and the Court concludes that the plaintiff has not carried the burden of demonstrating such likelihood. To make certain of the plaintiff's theory, the Court discussed with plaintiff's counsel the theory of the case and that colloquy is a part of this record. The Court commends counsel on his candor but concludes that plaintiff is not likely to prevail in an anti-trust case based on the defendant's termination of an independent contractor relationship and the setting up of an employee distribution system.

The Miami Herald has a right to terminate the relationship of independent contractor as stated in the contract just as the independent contractor has a right to terminate on fifteen days notice. The plaintiff may or may not have a claim for wrongful termination or improper notice but that claim is not cognizable under the anti-trust laws without facts far beyond anything demonstrated in this case. See Bushie v. Stenocord Corp., 460 F.2d 116 (9th Cir. 1972) and Joseph E. Seagram and Sons, Inc. v. Hawaiian Oke and Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969).

■ Particularly weak is the plaintiff's reliance on the employment agreement between the Miami Herald and Beth Danow as the basis of a conspiracy. A corporation cannot conspire with its employee to violate the anti-trust laws. Nelson Radio & Supply Co. v. Motorola, 200 F.2d 911, 913 (5th Cir. 1952).

Even if the plaintiff were on sound ground with the other points, she would have to show that the conversion in the distribution system was of some significance in the anti-trust law. It appears to the Court that there is not a likelihood of the plaintiff prevailing on this evidence since, given the many factors of control taken from the plaintiff's testimony, there is a substantial question about whether the plaintiff was ever an independent contractor. Cases arising in Florida have held that newspaper dealers are employees rather than independent contractors in the context of the National Labor Relations Act, N.L.R.B. v. Lindsay Newspapers, Inc., 315 F.2d 709 (5th Cir. 1963) and the Florida Workmen's Compensation Act, Charles Levine v. The Miami Herald, Travelers Ins. Co., Florida Industrial Relations Commission Order dated June 25, 1974 in claim number 086–14–4503.

■ 3. *The plaintiff has not demonstrated unusual hardships.* The Court does not have to pass on the plaintiff's sincerity in claiming hardships for these are not of the variety which support an injunction. The plaintiff's testimony indicated that money damages would compensate her and therefore an injunction is not justified.

■ 4. *No public policy issue is present.* The plaintiff has not demonstrated any public policy reason which would justify this Court exercising its injunctive powers to deal in a purely business dispute. The Miami Herald is free to run its business without interference from the courts until some irreparable harm to others has been demonstrated. The sole point of public policy present is that federal courts should not exercise jurisdiction except where a basis for that jurisdiction is shown.

## CONCLUSION

Therefore, based on the foregoing findings of fact and conclusions of law, it is hereby

Ordered that the plaintiff's motion for a preliminary injunction is hereby denied.

Done and ordered in chambers at Miami, Florida this 7th day of January, 1975.