Carl **LAMARCA** et al., Plaintiffs,

v.

The **MIAMI HERALD PUBLISHING COMPANY**, a Florida Corporation, and **Knight–Ritter Newspaper, Inc.**, a Florida Corporation, Defendants.

No. 75–596–CIV–CF.

United States District Court, S. D. Florida.

April 28, 1975.

Tobias Simon and Elizabeth J. du-Fresne, P.A., Miami, Fla., for plaintiffs.

Fisher & Phillips, Atlanta, Ga., and Steel, Hector & Davis, Miami, Fla., for defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, DENYING DEFENDANTS' MOTION TO DISMISS AND CARRYING WITH THE CASE DEFENDANTS' MOTION TO STRIKE

FULTON, Chief Judge.

This cause came before the Court on the Plaintiff's Motion for a preliminary injunction and after hearing testimony [1] reviewing the memoranda of law from counsel and hearing full argument the Court hereby enters this Order.

### FINDINGS OF FACTS

The Plaintiffs are all engaged in the delivery of the Miami Herald to home subscribers in Dade and Broward Counties, Florida. The majority of the Plaintiffs operate under what is entitled an "INDEPENDENT NEWSDEALERS CONTRACT", a copy of which is attached to the Plaintiffs' Complaint as Exhibit "A".

At the time of this hearing the Plaintiffs delivering newspapers under the above styled contracts had received notices of termination of such contracts from the Miami Herald pursuant to § C 1 of the contract; which gives both the carrier and the Miami Herald the right to terminate the agreement without cause by giving fifteen (15) days notice to the other party. Each Plaintiff who received a notice of termination of the Independent Newsdealers Contract was offered continued employment as a home delivery carrier under an agreement entitled "THE MIAMI HERALD PUBLISHING COMPANY NEWSPAPER CARRIER'S EMPLOYMENT AGREEMENT", a copy of which is attached to the Plaintiffs' Complaint as Exhibit "B".

In November, 1974, prior to the issuance of the notices of termination (Exhibit "D",) of the contracts held by the Plaintiffs, all home delivery carriers distributing the Miami Herald in Dade, Broward and Palm Beach Counties were offered the option of signing the Employment Agreement (Exhibit "B") or continuing under the Independent Contract (Exhibit "A"). Of approximately 1,083 carriers involved 965 elected to sign the Employee Agreement.

Although the contract that the Plaintiffs seek to preserve by injunction is entitled "Independent Newsdealers Contract", the testimony at the hearing established that there are substantial elements of control over the Plaintiffs and other carriers exercised pursuant to the contract and the established day to day working relationship.[2]

---

[1]. The evidence included the Affidavit of Donald Nizen, Director of Consumer Affairs of the Miami Herald and the verified Complaint.

[2]. Some of these control elements include:
(a) the Miami Herald selected the routes for which carriers had primary responsibility.
(b) The Miami Herald prepared route cards used by the carriers.
(c) The Herald dictated the time of delivery.
(d) The Herald dictated the manner of delivery.
(e) The Herald solicited customers on the carriers' routes on behalf of the carriers.
(f) The Herald handles the collection and billing for 60% of home delivery customers.
(g) The Herald receives complaints and instructions concerning customer service through its 100 person customer service center and passes those complaints and instructions to carriers.
(h) The Miami Herald delivers papers where there is a misdelivery and charges the carrier for such delivery.
(i) The Herald furnishes at or below cost supplies used by carriers in the delivery operation.
(j) Cash subsidies are paid to carriers by the Herald on certain routes.
(k) Carriers are required to turn over advance payments to the Herald.
(l) The Herald dictates the place of pickup of papers.

The parties have stipulated that the FLORIDA INDUSTRIAL RELATIONS COMMISSION ruled in June, 1974, that home delivery carriers operating under the "Independent Newsdealers Contract" were employees of the Miami Herald for purposes of the Florida Workmen's Compensation Statute. Charles Levine vs. The Miami Herald, Travelers Insurance Company, Florida Industrial Relations Commission Order dated June 25, 1974, Claim 086–14–4503.

The testimony of Don Nizen was uncontradicted on the point that the Herald's penetration of homes in Dade County measured as a percentage had dropped from approximately 80% in 1962 to less than 60% in 1974. The testimony also indicated that the Herald had spent a substantial sum of money on a Pay By Mail system on which it was relying to reverse this trend. It was also relying on a substantial promotion campaign in support of the Pay By Mail system. The desire to promote the Herald through an integrated price-add campaign was one motivating factor for the conversion. The Pay By Mail system has advantages to the Herald of an integrated marketing, billing and collection system. It has advantages to both the customer and carrier in that irritating and time consuming door to door collections are eliminated.

The testimony indicated diverse opinions from the carriers about the merits of the Pay By Mail system.

There was no competent testimony establishing that the Herald controlled the prices charged by carriers prior to the conversion. In fact the parties stipulated that a number of carriers had set prices above and below that price suggested by the Herald. At best the evidence indicates that a number of carriers were told that the Herald would set the prices charged by its employee-carriers.

There was no competent testimony to indicate the possibility of any injury to the carriers flowing from the conversion other than that compensible by money damages. The equipment and supplies that some carriers indicated they had purchased are subject to specific evaluation. Similarly, the income received by the carriers and possible loss thereof can be measured with a reasonable certainty.

## CONCLUSIONS OF LAW

In order to show that they are entitled to preliminary injunctive relief the Plaintiffs must show (1) they have no adequate remedy at law and will suffer irreparable injury if the injunction does not issue (2) that they have at least a reasonable likelihood of success on the merits; (3) that the balance of hardships are tilted in their favor; and (4) the injunction will serve the public interest. American Family Life Assurance Company of Col. v. Aetna Life Insurance Company, 446 F.2d 1178 (5th Circuit 1971). This Court has recognized and applied the criteria as outlined by the 5th Circuit in determining the appropriateness of preliminary injunctive relief. Harrington and Company, Inc. v. International Longshoremen Association, Local 1416, 356 F.Supp. 1079, (Southern District of Florida 1973.) It is the conclusion of this Court that the Plaintiffs have failed to show that they are entitled to the relief requested.

It was agreed at the commencement of the hearing that a basic, threshold issue in the case was whether the Plaintiffs held the positions of independent contractors or whether their status with relation to the Miami Herald was that of employee/employer prior to their termination. If the Plaintiffs were in fact employees the underlying complaint of the Plaintiffs would not state a claim cognizable in Federal Court since a Sherman or Clayton Act violation cannot be founded solely on a contractual relationship between an employer and its employee.[3] Eg. Nelson Radio and Sup-

3. With regard to Count 5 of the Complaint, alleging a violation of § 2 of the Sherman Act, a question is raised as to the Plaintiffs' standing to sue since it is doubtful that they could show any damages, assuming Count 5 is otherwise meritorious.

ply Company v. Motorola, 200 F.2d 911 (5th Circuit 1952).

The Plaintiffs' claim that the conversion by the Miami Herald from a distribution system utilizing independent contractors to one utilizing employees was merely a charade designed to perpetuate a price fixing scheme forced on them by the Herald. As viewed by the Plaintiffs, the conversion consisted solely of a change in the title of the contracts held by the carriers before and after the conversion from that of "Independent Contractor" to that of "employee". Plaintiffs argued that after the conversion the facts of the relationship between the carriers and the Miami Herald continued as before and that they therefore continued in the status of independent contractors. Thus, they conclude that the "Employee Agreement" with its provision allowing the Miami Herald to set the retail price of the paper is unlawful under § 1 of the Sherman Act and that the action of the Miami Herald in terminating the independent contracts in order to replace them with the employment agreements is unlawful and enjoinable.

This Court is not persuaded by the evidence that has been introduced here today that the relationship between the parties prior to the conversion was that of "independent contractor". Most certainly, the relationship after the conversion was, as termed, that of employer/employee. Indeed, it appears that the words "independent contractor" as they appear in the caption of the Agreement utilized by the Miami Herald in its distribution system may very well be termed a misnomer because of the substantial control that is exercised by the Miami Herald over the carriers, including the Plaintiffs. The Court has serious doubts with respect to whether the relationship prior to the conversion was that of an independent contractor given all the factors of control. Thus, this Court concludes that the Plaintiffs have not demonstrated a reasonable likelihood of success with respect to the basic issue of establishing that the relationship between the parties was that of independent contractor.

■■ Even assuming that the Plaintiffs could establish that their status prior to the conversion was that of independent contractor, they still would not be entitled to injunctive relief. The Miami Herald did not violate the anti-trust laws simply by changing the method of its distribution system from an independent system to one utilizing employees. A manufacturer of a product has the right to discontinue dealing with an independent party without violating the anti-trust laws. Ricchetti v. Meister Brau, Inc., 431 F.2d 1211 (9th Circuit 1970), cert. denied 401 U.S. 939, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971); Joseph E. Seagram and Sons, Inc. v. Hawaiian Oke and Liquors, 416 F.2d 71 (9th Circuit 1969), cert. denied 396 U.S. 1062, 90 S. Ct. 752, 24 L.Ed.2d 755, rehearing denied, 397 U.S. 1003, 90 S.Ct. 1113, 25 L. Ed.2d 415 (1970). A manufacturer may legally change the system of distribution of its products when sound business consideration dictate that a different system be used. The desire of the Miami Herald to exercise greater control over its distribution system including promotion of new subscribers, the delivery of its newspaper to subscribers and greater control over the quality of service offered constitute valid business reasons for making the conversion. Without the presence of facts going far beyond what has been established, this Court is without authority to prevent the Miami Herald from selling its product through its own employees. Bushie v. Stenocord Corporation, 460 F.2d 116 (9th Circuit 1972); Ark Dental Supply Company v. Cavitron Corporation, 461 F.2d 1093 (3rd Circuit 1972). Regardless of what the evidence may be during the trial of this case on the merits, the Miami Herald has the right to terminate the relationship of independent contractors and this Court cannot judicially compel the continuance of that relationship permanently. See Cartrade, Inc. v. Ford Dealers Advertising Association, 446 F.2d

**328**

289, (9th Circuit 1971), cert. denied 405 U.S. 997, 92 S.Ct. 1249, 31 L.Ed.2d 465 (1972). If the Court would not have the authority to issue an injunction at the conclusion of the trial on the merits as conceded by Plaintiffs' counsel, it would not be proper to grant preliminary relief.

No conclusion is reached as to whether or not a claim will lie for wrongful termination of the relationship of independent contractor or for violations of the anti-trust laws. Assuming, but not deciding, that the Plaintiffs will be able to establish that the Miami Herald violated the anti-trust laws prior to the conversion, such would not provide a basis for issuing an injunction. This is not a case in which a defendant has terminated the services of one or more independent distributors in order to effectuate or perpetuate alleged anti-trust violations. Milsen Co. v. Southland Corporation, 454 F.2d 363 (7th Circuit, 1971). In fact it appears that the conversion from independent contractor to employee would eliminate any possibility of antitrust violations. *Nelson Radio, supra.*

■■■ The Plaintiffs argue that should the injunction not issue by the time the trial on the merits was held the value of their routes as "ongoing businesses" would be destroyed and it would be impossible to measure that loss. Therefore, the Plaintiffs urge that factor as demonstrating irreparable harm calling for the injunctive relief. The Court finds this argument without merit, since it is clear that the damages, if any, suffered by the Plaintiffs can be fixed and measured with reasonable certainty at that point in time that the independent contracts were terminated. Eg. Simpson v. Union Oil Company of California, 411 F.2d 897 (9th Circuit 1969), reversed on other grounds 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed.2d 13 (1969). The Plaintiffs will have an opportunity at the trial on the merits to show that they have suffered compensible injury. The injury being compensible by money damages, equitable relief is not justified. Robinson v. Sax, 115 So.2d 438 (Florida Appeals 3rd, 1959).

Consonant with the conclusions that the Plaintiffs have not suffered irreparable harm and will be able to obtain monetary relief for any damages flowing from any unlawful conduct of the Miami Herald, the Court concludes that the Plaintiffs have not demonstrated any unusual hardships in this case that would warrant the issuance of an injunction.

Finally, it is the opinion of this Court that the public interest will not be harmed by the denial of the request for an injunction.

## CONCLUSION

Therefore, based on the foregoing Findings of Fact and Conclusions of Law, it is hereby

Ordered that the Plaintiffs' Motion for a preliminary injunction is hereby denied. It is

Further ordered that the Defendants' Motion to Dismiss is denied without prejudice and with leave to refile. It is

Further ordered that the Defendants' Motion to Strike is carried with the case and reserved for ruling. It is

Further ordered that the Defendants file an Answer to the Plaintiffs' Complaint within ten (10) days with leave to file any appropriate motions prior to answering.