**Alan G. HARDIN, Jr., and Edwin B. Pate, et al., Plaintiffs,**

**v.**

**The HOUSTON CHRONICLE PUBLISH-ING COMPANY et al., Defendants.**

**Civ. A. No. 74–H–643.**

United States District Court,
S. D. Texas,
Houston Division.

Feb. 14, 1977.

Ben H. Schleider, Jr., Houston, Tex., for plaintiffs.

W. Robert Brown of Liddell, Sapp, Zivley & Brown, Houston, Tex., for defendant Houston Chronicle Publishing Co.

Frank J. Knapp of Butler, Binion, Rice, Cook & Knapp, and James E. Crowther, Houston, Tex., for defendant Houston Post.

## MEMORANDUM OPINION

NOEL, District Judge.

This action came before the Court on the applications of two of the plaintiffs, Alan Hardin and Edwin Pate, for a preliminary injunction, and at the conclusion of an evidentiary hearing, after considering the evidence adduced therein as well as the memoranda of law submitted by counsel and oral arguments, the Court denied the applications from the bench on February 2, 1977. This memorandum opinion is entered to set forth the reasons for the Court's bench ruling.

This is an antitrust action for monetary and injunctive relief brought by several independent distributors against the Houston Chronicle Publishing Company (hereinafter referred to as the Chronicle) and various past and present employees of the Chronicle. The applications for preliminary injunctive relief presently before the Court were generated by the Chronicle's terminations of its distributorship contracts with plaintiffs Hardin and Pate. Hardin and Pate allege that they were terminated because they failed to adhere to the Chronicle's suggested retail price. They contend that their terminations were thus in furtherance of a combination to fix a maximum resale price, which is a *per se* violation of Section One of the Sherman Act, 15 U.S.C. § 1.[1]  *See Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968).

Defendants, on the other hand, assert that Hardin and Pate were terminated primarily because of their failure to adequately service their districts as evidenced by an excessive number of complaints from their subscribers and a loss of circulation in their districts. To the extent the terminations were motivated by the price increase, the Chronicle argues that the terminations were unilateral refusals to deal within the ambit and protection of the *Colgate* doctrine. *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919).

The factual background for the present dispute is as follows. Hardin and Pate became independent newspaper distributors for the Chronicle in 1971 and 1973, respectively. Their distributorship contracts with the Chronicle provided for termination at will by either party upon 15 days written notice to the other party. In August of 1976 Pate leased his distributorship district to Hardin, the terms of the oral lease providing for a base payment by Hardin to Pate of $200.00 per month with additional sums being due if the number of subscribers in Pate's district rose above 1600. The Chronicle was given no notice of the lease arrangement despite the fact that the distributorship contract expressly required the written consent of the other party as a condition to its assignment. Since August of 1976 Hardin has managed Pate's district.

The current suggested retail price established by the Chronicle for home delivery of its newspaper is $3.75 per month. This suggested retail price has been in effect since December of 1974. Until December of 1976 Hardin and Pate had set the home delivery subscription price for their districts in accordance with the suggested retail price established by the Chronicle, but in that month Hardin decided to raise the home delivery price for his own district as well as Pate's district to $5.00 per month. On December 24, 1976 Hardin notified his subscribers that their subscription rate was being raised to $5.00 per month effective January 1, 1977. On December 28, 1976

---

1. Plaintiffs also allege that the Chronicle has committed a *per se* violation of Section One of the Sherman Act, 15 U.S.C. § 1, by virtue of imposing territorial restraints upon its distributors. *See United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1969). However, there is no allegation that the terminations were in furtherance of or in any way related to the territorial restraints. Accordingly, the applications for preliminary injunctive relief do not put in issue the territorial restraints claim.

Hardin received notice from the Chronicle that his distributorship contract was being terminated effective January 12, 1977. On or about January 11, 1977 Pate also received a termination notice from the Chronicle, which terminated his contract effective January 31, 1977.

On January 6, 1977 Hardin filed an application for a temporary restraining order and preliminary injunction wherein he sought injunctive relief restraining the Chronicle from terminating his distributorship pending a trial on the merits of his antitrust claims. Judge Carl O. Bue initially considered the application for a temporary restraining order on January 10, 1977 in the absence of the undersigned and decided to issue a temporary restraining order restraining the Chronicle from terminating Hardin until 5:00 p. m., January 17, 1977, so as to maintain the status quo until the matter could be presented to the undersigned. On January 17, 1977 a request for an extension of the temporary restraining order was heard by this Court in chambers and denied on the ground that Hardin had an adequate remedy at law for any wrong committed by the Chronicle in terminating him. The application for a preliminary injunction was set for an evidentiary hearing on January 24, 1977.

On January 31, 1977, the day the hearing on Hardin's application was scheduled to conclude, Pate filed an application for a temporary restraining order and preliminary injunction virtually identical to Hardin's application. Pate's application for a temporary restraining order was denied and Pate's application for a preliminary injunction was taken up on the stipulation of counsel that the evidence theretofore presented on Hardin's application should also be considered by the Court in deciding Pate's application. In order to give Pate an opportunity to testify, the hearing was recessed until February 2, 1977. On that date the taking of evidence was concluded, oral arguments were made to the Court, and both applications for a preliminary injunction were denied for the reasons which follow.

■■■ Private parties are entitled to injunctive relief against antitrust violations when and under the same conditions and principles as injunctive relief . . . is granted by courts of equity, . . . and upon . . . a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction [shall] issue.

15 U.S.C. § 26. The extraordinary remedy of a preliminary injunction is granted by equity courts only if all four of the following conditions are present: (1) there is a substantial likelihood that movant will prevail on the merits; (2) there is a substantial threat that movant will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to movant outweighs the threatened harm the injunction may do to the opposing party; and (4) granting the preliminary injunction will not disserve the public interest. *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). Inasmuch as injury caused by the violation of some federal regulatory statutes is presumed to be irreparable,[2] it is worthy of note that the section of the Clayton Act quoted above explicitly makes applicable to antitrust cases the traditional prerequisites for injunctive relief, including the requirement that a showing of *irreparable* loss or damage be made before a preliminary injunction may issue. *See Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1359 (2nd Cir. 1976).

The Fifth Circuit made clear in *Canal Authority v. Callaway, supra,* that in considering the four prerequisites for preliminary injunctive relief, the district courts must remember that a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion. The primary justification for applying this remedy is to preserve

---

**2.** See, e. g., *United States v. Hayes International Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969), holding that irreparable injury should be presumed from the very fact that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, had been violated.

the court's ability to render a meaningful decision on the merits. . . . Thus only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction. 489 F.2d at 573.

■ In this case the Court finds that Hardin and Pate have wholly failed to carry their burden of showing that the injury caused by their termination is irreparable, and that if they should prevail in the trial on the merits, the legal remedy of treble damages would be inadequate. Plaintiffs have not even attempted to show that the value of their distributorships is not ascertainable, or that their damages would be difficult to measure. Likewise, no attempt has been made to show that defendants would be unable to satisfy a monetary judgment against them.

There was a similar failure of proof on the issue of irreparable injury in the case of *Paul v. Pulitzer Publishing Co.*, 1974 CCH Trade Cases ¶ 75,116 (E.D.Mo.1974), which was also an antitrust action by terminated distributors against the newspaper publisher. In that case the court concluded that it could not

assume in the absence of proof on the issue that it is impossible to give a reliable approximation of the value of these routes herein involved. In a similar case, *Albrecht v. Herald Co.*, 452 F.2d 124 (8th Circuit 1971), the plaintiff was forced to sell his carrier route as a result of the defendant's actions which were later found to be a violation of Section 1 of the Sherman Act, and the jury placed a value on the route. The value of the routes involved here are ascertainable just as the route in the *Albrecht* case was, and where the loss, as in this case, may be ascertained in money damages, no irreparable damage is shown and refusal to grant a preliminary injunction is proper.

1974 CCH Trade Cases at 96, 973. *See Graham v. Triangle Publications, Inc.*, 344 F.2d 775, 776 (3rd Cir. 1965); *Lamarca v. Miami Herald Publishing Co.*, 395 F.Supp. 324, 328 (S.D.Fla.1975), *aff'd* 524 F.2d 1230 (5th Cir. 1975) (without published opinion); *McGuire v. Times Mirror Co.*, 405 F.Supp. 57, 66 (C.D.Cal.1975); *Millcarek v. Miami Herald Publishing Co.*, 388 F.Supp. 1002, 1005 (S.D.Fla.1975) (Fay, J.).

■ An additional consideration in this case is that the dispute is over a personal service contract which is terminable at will by either party. Courts of equity have traditionally been reluctant to supervise the performance of personal service contracts. *See* DOBBS, REMEDIES 63 (1973). That the distributorship contracts here would require extensive supervision is abundantly clear. For example, in their applications for preliminary injunctions plaintiffs request that defendants be enjoined from "engaging in any course of conduct or action which places the plaintiff at a competitive disadvantage to other dealers of The Chronicle newspaper".

One area where a distributor can obtain an advantage is in the wholesale rate which he pays for purchasing the Chronicle. Hardin testified at the hearing that he felt his wholesale rate was unjustifiably higher than most other distributors'. In his affidavit filed with his application for a preliminary injunction, Hardin states that he believes that one of the reasons why his requests for a wholesale rate adjustment were not acted upon was the fact that he was a plaintiff in this action. The Court would continually be faced with such supervisory problems if it attempted to meld these antagonistic parties into an ambiguous contractual relationship. The Court declines to assume such a supervisory role, where, as here, there has been no showing that money damages will not adequately remedy any wrong. *See Millcarek v. Miami Herald Publishing Co.*, 388 F.Supp. 1002, 1005 (S.D.Fla.1975) (Fay, J.).

Hardin and Pate argue that their terminations, if not enjoined, will result in the permanent loss of their customers and their distributorship businesses. Such a loss, plaintiffs contend, is irreparable *per se* without any necessity of showing that the loss is not measurable in money damages. Plaintiffs cite three cases out of the Second

**1118**

Circuit in support of their theory of irreparable injury: *Semmes Motor, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2nd Cir. 1970); *Lepore v. New York News, Inc.*, 365 F.Supp. 1387 (S.D.N.Y.1973); and *Lepore v. New York News, Inc.*, 346 F.Supp. 755 (S.D. N.Y.1972).[3]

█ Although a showing of a strong likelihood of success on the merits may compensate for a marginal showing of inadequacy of remedy at law, the Court is of the opinion that a total failure of proof as to why money damages are not measurable or adequate cannot be excused, even in a dealer termination case. To the extent the decisions cited by plaintiffs hold otherwise, they are against the weight of authority. For example, in *Lamarca v. Miami Herald Publishing Co.*, 395 F.Supp. 324 (S.D.Fla.1975), aff'd, 524 F.2d 1230 (5th Cir. 1975) (without published opinion), plaintiffs were independent newspaper carriers who brought an action against the publisher alleging that their terminations were in violation of the antitrust laws. Plaintiffs argued that a preliminary injunction should issue because otherwise by the time the trial on the merits was held the value of their routes as ongoing businesses would be destroyed. Plaintiffs urged that factor as demonstrating irreparable harm. The district court found that argument to be without merit since it is clear that the damages, if any, suffered by the Plaintiffs can be fixed and measured with reasonable certainty at that point in time that the independent contracts were terminated. Eg. *Simpson v. Union Oil Company of California*, 411 F.2d 897 (9th Circuit 1969), reversed on other grounds 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed.2d 13 (1969). The Plaintiffs will have an opportunity at the trial on the merits to show that they have suffered compensible injury. The injury being

compensible by money damages, equitable relief is not justified. *Robinson v. Sax*, 115 So.2d 438 (Florida Appeals 3rd, 1959).

395 F.Supp. at 328. *See* cases cited at 1117, *supra.*

For the foregoing reasons, the Court holds that plaintiffs have failed to satisfy the threshold requirement for injunctive relief of establishing irreparable injury. Accordingly, the Court need not consider the other requirements for preliminary injunctive relief.

An order will be entered of even date denying the applications of Alan Hardin and Edwin Pate for a preliminary injunction.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law.

---

**3.** Plaintiffs also cited *Interphoto Corp. v. Minolta Corp.*, 417 F.2d 621 (2nd Cir. 1969), aff'g, 295 F.Supp. 711 (S.D.N.Y.1969); *Jacobson & Co., Inc. v. Armstrong Cork Co.*, 416 F.Supp. 564 (S.D.N.Y.1976); *Phillips v. Crown Central Petroleum Corp.*, 376 F.Supp. 1250 (D.Md. 1973). However, the courts in each of those cases based their decisions in part on the find-

ing that the plaintiff had established that his losses were of such a nature that they could not be measured in money damages. Thus, those cases are clearly distinguishable from the present case where plaintiffs have made no attempt to show that their damages would be even difficult to measure monetarily.