**DFW METRO LINE SERVICES, A Texas Partnership, Plaintiff–Appellant**

v.

**SOUTHWESTERN BELL TELEPHONE CO., A Missouri Corp., Defendant–Appellee.**

No. 89–1835.

United States Court of Appeals, Fifth Circuit.

May 29, 1990.

---

Ray G. Besing, Ray G. Besing & Associates, Dallas, Tex., for plaintiff-appellant.

Donna Lynn Snyder, Southwestern Bell Telephone Co., Curt Frisbie, Gardere & Wynne, Dallas, Tex., for defendant-appellee.

Before CLARK, Chief Judge, and WISDOM and SMITH, Circuit Judges.

PER CURIAM:

## I

Plaintiff/appellant DFW Metro Line Services (DFW) offers a form of telephone service (flat-rate calling between Dallas and Fort Worth, sometimes called "metro service") that is also offered by Southwestern Bell (Bell).[1] As part of the equipment for its metro service, DFW uses telephone lines that it leases from Bell. DFW filed suit for injunctive relief or damages after Bell, on June 8, 1989, informed DFW that Bell would discontinue its line leasing to DFW unless DFW began paying Bell much higher monthly rates reflecting "access charges".[2]

Bell's stated reason for requiring DFW to pay higher rates was that the lower rates that DFW had been paying were applicable only to companies using the lines for Radio Common Carrier (RCC) services [3] according to Bell's tariff approved by the Texas Public Utilities Commission (PUC) [4]. Bell stated that, to comply with its PUC-approved tariff, it was required to charge DFW the higher rate applicable to the "resale" type of service for which (Bell had just learned [5]) DFW was using the leased lines. DFW argues that Bell's tariff argument is just a sham to cover Bell's real motive to drive out DFW as a competitor in the metro service market.

Discovery in this case proceeded while a temporary restraining order issued by the district court was in effect. Based on the

1. A third company, not a party to this case, also offers metro service between Dallas and Fort Worth.

2. The price for use of the lines would rise from approximately $5,000 to approximately $77,000 a month.

3. RCC services include services such as one-way paging, as distinct from the regular two-way telephone calling involved in metro service.

4. Southwestern Bell, like other telecommunications common carriers, is required under Tex-

as's Public Utility Regulatory Act (PURA) to file proposed tariffs describing all rates, regulations and services before a service can be offered to the public. PURA § 32. The PUC then must review such rates, regulations and services, and approve the proposed tariff only if its terms are fair and reasonable. PURA §§ 18, 35, 37, 38. An approved tariff has the force and effect of law. *Carter v. AT & T, Co.*, 365 F.2d 486, 496 (5th Cir.1966).

5. Bell alleges that it had previously understood that DFW was using the lines for one-way paging service.

parties' written submissions to the court, the district court on August 30, 1989 filed a Memorandum Order denying DFW's application for preliminary injunction. DFW appeals from that denial.

## II

■ Bell argues that the federal courts do not have jurisdiction over this case because the PUC has exclusive original jurisdiction over disputes involving Texas's public utility tariffs. Bell's argument begs the question. DFW's complaint alleges a violation of the federal antitrust laws, an allegation that brings the case within federal jurisdiction. The PUC has exclusive jurisdiction only if Bell is immunized from antitrust liability by the state action doctrine of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Whether Bell is thus immunized is a federal question to be litigated in federal court.

## III

■ To obtain a preliminary injunction, a movant must show: 1) a substantial likelihood of success on the merits, 2) a substantial threat that irreparable injury will result if the injunction is not granted, 3) that the threatened injury outweighs the threatened harm to the non-movant, and 4) that granting the injunction is not adverse to the public interest. The traditional prerequisites for injunctive relief are applicable to antitrust cases. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985); *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). *See also Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 98 (5th Cir.), *cert. denied*, 486 U.S. 1023, 108 S.Ct. 1996, 100 L.Ed.2d 228 (1988). The district court in this case found that the plaintiff, DFW, failed to

make any of those four showings necessary for a preliminary injunction. Because we agree that DFW failed to make the threshhold showing of irreparable injury, we affirm the district court's order.[6]

There can be no irreparable injury where money damages would adequately compensate a plaintiff. *See Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir.1981); *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir.1975). The lost goodwill of a business operated over a short period of time is usually compensable in money damages.[7] *See Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 763 (5th Cir.1979); *Hardin v. Houston Chronicle Publishing Co.*, 426 F.Supp. 1114, 1117–18 (S.D.Tex.1977), *aff'd*, 572 F.2d 1106 (5th Cir.1978). DFW has not shown, nor even argued, that special circumstances in this case would make money damages inadequate should DFW prevail in an adjudication of this case on the merits. The district court correctly observed that, because any potential injury suffered by DFW (including its going out of business) could be calculated and recompensed in the form of damages, DFW did not prove a likelihood of irreparable injury. We therefore AFFIRM the district court's denial of a preliminary injunction in this case.

---

**6.** As an additional basis for our holding, we find that Southwestern Bell is immune from the antitrust liability alleged in DFW's complaint under the "state action" doctrine enunciated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), as applied to private state-regulated ratemaking by *Southern Motor Carriers Rate Conference v. United States*, 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985). Southwestern Bell clearly meets the two-prong test set out in

*California Retail Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). There is no, therefore, likelihood of success on the merits in the instant case.

**7.** DFW Metro had only been in business for one and a half years at the time this suit was filed.