**MILLENNIUM RESTAURANTS GROUP, INC., d/b/a Cabaret Royale, et al., Plaintiffs,**

**Clubco Mgmt., Inc., d/b/a Dallas Gentlemen's Club, et al., Intervenors,**

v.

**CITY OF DALLAS, TEXAS, et al., Defendants.**

**No. Civ.A.3:01–CV–0857–G.**

United States District Court, N.D. Texas, Dallas Division.

Oct. 18, 2001.

John A. Koepke, A. David Gross, Jackson Walker, Dallas, TX, Steven Hershey Swander, Law Office of Steven H. Swander, Fort Worth, TX, Roger Earl Albright, Law Office of Roger Albright, Dallas, TX, for Plaintiffs.

Doreen E. McGookey, Dallas City Attorney's Office, Dallas, TX, Arthur F. Selander, Quilling, Selander, Cumminskey & Lownds, Dallas, TX, for Defendants.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court is the motion of the plaintiffs Millennium Restaurants Group, Inc. d/b/a Cabaret Royale ("Millenium") and Steven W. Craft ("Craft")[1] and the intervenors Clubco Mgmt., Inc. d/b/a Dallas Gentlemen's Club ("Clubco") and Brandon P. Gale ("Gale") for a preliminary injunction. For the reasons stated below,[2] the motion is granted.[3]

1. On July 30, 2001, the court dismissed without prejudice the claims of the plaintiffs Club Hospitality, Inc. d/b/a Lipstick and Nick Mehmeti after all parties to this action signed a voluntary stipulation of dismissal without prejudice.

2. As required by Rule 52(a), FED.R.CIV.P., the court's findings of fact and conclusions of law are set out in this memorandum order. The motion has been decided in accordance with the procedure authorized by Rules 43(c) and 78, FED.R.CIV.P., on the evidence and briefs submitted by the parties.

3. The defendants have made several objections to evidence submitted by the plaintiffs and intervenors in support of their motion for preliminary injunction, including that such evidence constitutes hearsay, inappropriate expert opinion, and speculation. *See* Response at 20–24. These objections are de-

## I. BACKGROUND

Millennium is an existing licensed adult cabaret operating in a conforming location under Chapter 41A of the Dallas City Code, the provision which governs "Sexually Oriented Businesses" ("Chapter 41A"). Brief of Plaintiffs in Support of a Preliminary Injunction ("Motion") at 2. Millennium or its predecessors have operated a licensed adult cabaret since 1988. *Id.* Millennium does business as Cabaret Royale, located at 10723 Composite Drive, Dallas Texas. *Id.*

On or about April 17, 2001, the City of Dallas (the "City") issued a letter to Cabaret Royale revoking its license under Chapter 41A to operate as a sexually oriented business. *Id.*; Brief in Support of Defendants' Response to Plaintiffs' Motion for Preliminary Injunction ("Response") at 2. The revocation would have become effective on May 17, 2001 if this court had not issued an agreed temporary restraining order prohibiting it. Motion at 2. The revocation letter cited Chapter 41A, § 41A–10 ("the ordinance") as the basis for revocation of the license, specifically referring to the convictions of four entertainers at Cabaret Royale for public lewdness on the premises. Motion at 2; Response at 2; Appendix to Defendants' Findings of Fact and Conclusions of Law and Brief in Support of Defendants' Response ("Defendants' Appendix") at 78–79.

Chapter 41A, § 41A–2(4) of the Dallas City Code defines an "adult cabaret" as: a commercial establishment that regularly features the offering to customers of live entertainment that:

> (A) is intended to provide sexual stimulation or sexual gratification to such customers; and
>
> (B) is distinguished by or characterized by an emphasis on matter depicting, simulating, or relating to "specified anatomical areas" or "specified sexual activities." [4]

*Id.*, located in Plaintiffs' and Intervenors' Appendix in Support of Findings of Fact and Conclusions of Law and Brief in Support of Preliminary Injunction ("Plaintiffs' Appendix") at 2 (footnote added).

Clubco is an existing adult cabaret operating in a conforming location. Motion at 3. Clubco has operated a licensed adult cabaret since 1992. *Id.* Clubco does business as Dallas Gentlemen's Club, located at 2117 W. Northwest Hwy., Dallas, Texas. *Id.* Intervenor Gale, an officer of Clubco, holds the city license under which Clubco operates as an adult cabaret. *Id.*

On or about May 9, 2001, the City issued a notice letter to Clubco revoking its license under Chapter 41A to operate as a sexually oriented business. *Id.*; Response at 3. The revocation would have become effective on June 8, 2001, if an agreed temporary restraining order had not been entered the same day. Motion at 3. This revocation letter also cited Chapter 41A, § 41A–10(b)(6) as the basis for revocation of the license, specifically referring to the convictions of three entertainers at Dallas Gentlemen's Club for public lewdness on

---

nied. See *Federal Savings & Loan Insurance Corporation v. Dixon*, 835 F.2d 554, 558 (5th Cir.1987)(affirming lower court's reliance on hearsay evidence in preliminary injunction proceeding: "( [A] preliminary injunction proceeding is not subject to jury trial procedures.")). Furthermore, in reaching its decision, the court did not rely on any of the materials to which objection is made.

**4.** Both "specified anatomical areas" and "specified sexual activities" are terms defined by the Dallas City Code. *See* Chapter 41A, §§ 41A–2(29) and (30), located in Plaintiffs' Appendix at 5–6.

the premises. *Id.;* Response at 3; Defendant's Appendix at 80–81.

The adult cabarets at issue in this case offer performances of erotic dancing to their customers. Motion at 3. The female performers dance topless and wear G-strings. *Id.*

The plaintiffs and intervenors are before the court now because the City is proposing to revoke their licenses to operate adult cabarets. *Id.* at 4. The defendant City bases its revocation on § 41A–10(b)(6) of Chapter 41A, a provision of the Sexually Oriented Business Ordinance which states that:

> (b) The chief of police shall revoke a license if the chief of police determines that one or more of the following is true:
>
> \* \* \* \* \* \*
>
> (6) On two or more occasions within a 12–month period, a person or persons committed an offense occurring in or on the licensed premises of a crime listed in Section 41A–5(a)(8)(A) [5] for which a conviction has been obtained, and the person or persons were employees of the sexually oriented business at the time the offenses were committed.

*Id.,* located in Plaintiff's Appendix at 13 (footnote added).

This section, under which the City has acted, does not require that the license holder had knowledge of an employee's violation of the law. *See* Chapter 41A, § 41A–21(b) ("Except where otherwise specified, a culpable mental state is not required for the commission of an offense under this chapter."). Plaintiffs' Appendix at 24; Motion at 5. Nor does it require the licensee to have been negligent in failing to adequately instruct or supervise employees in avoiding lewd conduct as part of their

erotic dance. Motion at 5. Rather, the ordinance calls for the automatic revocation of the license without any inquiry into the culpability of the licensee for the unlawful conduct. Chapter 41A, § 41A–10(b)(6), located in Plaintiffs' Appendix at 13.

The plaintiffs and intervenors further allege that the manner in which convictions are obtained against the performers offers no notice to the licensees of the facilities. Motion at 5. A dancer believed by a police officer to have crossed the line in her performance—from the lawfully erotic to the unlawfully lewd—is sent a notice of a misdemeanor violation of the law in the mail. *Id.* Both the plaintiffs and the defendants agree that the ordinance imposes no duty or requirement upon the City to contact the employers with respect to offenses committed by their employees. *Id.;* Response at 5. However, the defendant City points out that uniformed officers enter the establishments the evening offenses occur to identify offending employees. Response at 5; Affidavit of Michael T. Igo, located in Defendants' Appendix at 82–83. The dancers are then allowed to plead no contest to the offense and serve little or no jail time. Motion at 5. Thus, the plaintiffs and intervenors contend, the dancers have little or no incentive to contest the charge and two convictions can be obtained before the licensee is even aware of the problem. *Id.*

## II. *ANALYSIS*

■ To obtain a preliminary injunction, it is well established that the movants must show: (1) a substantial likelihood that the movants will ultimately prevail on the merits; (2) a substantial threat that

---

**5.** Chapter 41A § 5(a)(8)(A)(ii) defines public lewdness as an actionable offense. *See* Plaintiffs' Appendix at 8.

the movants will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movants outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) that granting the injunction is not adverse to the public interest. *Vision Center v. Opticks, Inc.,* 596 F.2d 111, 114 (5th Cir.1979) (citation omitted), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir.1985) (citing *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974)).

■ The decision to grant or deny a preliminary injunction is left to the sound discretion of the district court. *Mississippi Power & Light,* 760 F.2d at 621. A preliminary injunction is an extraordinary remedy which should only be granted if the movants have clearly carried their burden of persuasion on all of the four factors. *Id.; Allied Marketing Group, Inc. v. CDL Marketing, Inc.,* 878 F.2d 806, 809 (5th Cir.1989) (citations omitted). Each of these factors will be discussed separately.

A. *Substantial Likelihood of Success*

■ The plaintiffs and intervenors have shown a substantial likelihood of success on their claim that the ordinance violated applicable federal law in at least the following ways. First, they have shown a substantial likelihood of success on their claim that the City's attempt to revoke the plaintiffs' licenses based on past performances by entertainers is an unconstitutional prior restraint on the freedom of expression. Motion at 8. In *Universal Amusement Company, Inc. v. Vance,* 587 F.2d 159 (5th Cir.1978) (en banc), *aff'd,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980), the Fifth Circuit noted that "[a] prior restraint of expression comes before [the] court with 'a heavy presumption

against its constitutional validity.'" *Id.* at 165, citing *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). In *Vance,* the Fifth Circuit considered an effort by Texas authorities to close an adult theater for one year as a public nuisance on the basis of its showing of legally obscene, and therefore unprotected, material. The court, in language directly applicable to the present situation, found that the use of the nuisance statutes to accomplish this end would be unconstitutional, holding that:

> Read together, Articles 4666 and 4667 clearly create a prior restraint. The statutes allow the state to close, for one year, a theatre that has exhibited obscene films. Unless a bond from $1,000 to $5,000 is posted, the showing of *any* motion picture is punishable by contempt of court. Thus, future conduct that may fall within the purview of the first amendment is absolutely prohibited after a finding of unprotected present conduct. It was precisely this practice that was condemned by the Supreme Court in the landmark case of *Near v. Minnesota,* 283 U.S. 697 [51 S.Ct. 625, 75 L.Ed. 1357] (1931). Moreover, although a theater operator may post the bond and show films, he forfeits that bond if one of the films he has selected is deemed obscene. This statutory scheme obviously encourages a theater operator to steer wide of the danger zone by avoiding borderline films that are nonetheless protected under the first amendment. The line between obscenity and protected speech is "dim and uncertain," *Bantam Books, supra,* 372 U.S. at 66 [83 S.Ct. 631], and difficulty in locating that line leads to self-censorship, a particularly subtle and most insidious form of the malady.

*Vance,* 587 F.2d at 165–66 (emphasis in original) (footnote omitted).

The court agrees with the plaintiffs' and intervenors' assertion that the license revocation procedure at issue here brings it within the ambit of *Vance.* As in *Vance,* the City proposes to prevent a business operator's full exercise of First Amendment freedoms going forward, on the basis of past instances in which expression offered by the business has crossed the line from lawful to unlawful. Motion at 11; see also *Gayety Theatres, Inc. v. City of Miami,* 719 F.2d 1550, 1552 (11th Cir. 1983) (holding that a city could not use past conduct to enjoin future protected speech).

Second, the plaintiffs and intervenors have shown a substantial likelihood of success on their claim that the license revocation at issue here is not justified under *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Motion at 14. Content neutral regulations burdening expressive activity, such as the ordinance at issue, must be judged under the four-factor test of *O'Brien.*

■ The *O'Brien* test states that a content neutral ordinance survives constitutional challenge, despite its adverse impact on the exercise of First Amendment rights, when (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the asserted governmental interest is unrelated to the suppression of free expression; and (4) the incidental restrictions on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. 391 U.S. at 377, 88 S.Ct. 1673. The plaintiffs and intervenors contend that the use of employee convictions to revoke a sexually oriented business license violates the principles of *O'Brien,* because no showing of knowledge, culpable state of mind, or even negligence on the part of the licensee is required before suspension or revocation of the license. Motion at 15.

While the plaintiffs and intervenors concede that the City has the authority to license sexually oriented businesses, they argue that its regulations in this case do not pass muster under the third and fourth prongs of *O'Brien.* The third prong of *O'Brien* is violated when the governmental interest is related to the suppression of free expression. 391 U.S. at 377, 88 S.Ct. 1673. The court finds that the strict liability feature of the ordinance is constitutionally suspect because it does not relate to or further the governmental interest of assuring law abiding licensees.

The fourth prong of *O'Brien* is likewise violated because the regulation in question is not narrowly tailored to do only what is necessary to achieve a substantial governmental interest. *Id.* Revocation of a business license based on two convictions of employees for public lewdness over a one year period without requiring any knowledge on the part of management is a greater restriction on free expression than is essential to furtherance of the governmental interest because the predicate offenses do not tend to show that management is careless, reckless, or incompetent.

The City claims that this case is controlled by *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986). In *Arcara,* the Supreme Court upheld the application of a nuisance statute which authorized the closure of a building found to be a public health nuisance because it was being used as a place for prostitution and lewdness. *Id.* at 698, 106 S.Ct. 3172. There, an adult book store was shut down pursuant to the statute after an investigation disclosed that illicit sexual activities, including solicitation of prostitution, occurred on the premises. *Id.* The Supreme Court explained that the First Amendment scrutiny applied in other

cases, such as *Gayety*, 719 F.2d 1550, did not apply in *Arcara* because in those previous decisions, "it was conduct with a significant expressive element that drew the legal remedy in the first place." 478 U.S. at 706, 106 S.Ct. 3172.

In *Arcara*, the state enforcement action was not premised on legal violations which took place when expressive activity crossed the line into unprotected criminal obscenity or lewdness. The conduct prompting the enforcement action (such as solicitation of prostitution) had "nothing to do with any expressive conduct at all," since the expressive conduct at issue was the selling of adult books. *Id.* at 705, n. 2, 106 S.Ct. 3172. Accordingly, the Court found no First Amendment issue of prior restraint. Here, by contrast, the violations undoubtedly arise from conduct that at least has an expressive element. *Arcara's* holding, consequently, does not apply to the facts of this case. The City has proffered no defense against the application of the ruling in *Vance* [6] that it may not target future expressive conduct simply because of past unlawful expressive activity.

### B. *Irreparable Injury*

■ "[O]nly those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction." *Callaway*, 489 F.2d at 573. The plaintiffs and intervenors claim that they have both a strong economic basis and a strong constitutional basis for irreparable injury if injunctive relief against revocation of their licenses to operate adult cabarets is not granted. Motion at 7.

■ First, regarding the claim of irreparable economic injury, although the City's revocation of the plaintiffs' and intervenors' licenses to operate may result in loss of customers and make the pecuniary injury difficult to calculate, these losses would not constitute *per se* irreparable injury. See *Hardin v. Houston Chronicle Publishing Company*, 426 F.Supp. 1114, 1117–18 (S.D.Tex.1977), *aff'd*, 572 F.2d 1106 (5th Cir.1978). Rather, the plaintiffs and intervenors are required to show that the loss cannot be measured in money damages. See *id.* The plaintiffs and intervenors have not shown that they would suffer irreparable economic injury in this case. They have merely argued that it will be put out of business, losing customers and good will. They have made no showing that monetary damages would be inadequate. The plaintiffs and intervenors have simply asserted that irreparable injury will result from denial of the injunction. This is insufficient under *Hardin*. 426 F.Supp. at 1117–18; see also *DFW Metro Line Services v. Southwestern Bell Telephone Company*, 901 F.2d 1267, 1268–69 (5th Cir.) (per curiam) (affirming denial of preliminary injunctive relief on ground that movant had failed to show irreparable injury but pretermitting discussion of the other three *Callaway* factors), *cert. denied*, 498 U.S. 985, 111 S.Ct. 519, 112 L.Ed.2d 530 (1990).

Furthermore, as the City points out in its response, the plaintiffs and intervenors do not have to close their businesses if their licenses to operate sexually oriented businesses are revoked. Response at 18. The plaintiffs and intervenors can still pro-

**6.** The continuing validity of the Fifth Circuit's decision in *Vance* and its relevance to erotic dancing was expressly acknowledged last year in Chief Judge Buchmeyer's opinion in *LLEH, Inc. v. Wichita County, Texas*, 121 F.Supp.2d 513 (N.D.Tex.2000), which struck down an injunction provision in a local ordinance governing erotic dancing on the authority of *Vance*, on the ground that it would constitute "an unconstitutional prior restraint of free expression entitled to protection under the First Amendment." 121 F.Supp.2d at 527.

vide female entertainment, but the dancers have to wear more clothing and cannot perform certain simulated sexual acts. *Id.; see also* Dallas City Code, §§ 41A-2(29) and (30), located in Plaintiffs' Appendix at 5–6. In fact, one of the plaintiffs currently operates such a business without a sexually oriented business license. Response at 18; Defendants' Appendix at 84–86.

■ The plaintiffs and intervenors further claim that they would suffer irreparable injury to their constitutional rights if the injunction is not granted. The court agrees with the plaintiffs' and intervenors' assertion that the topless dancing featured at their cabarets is expressive conduct "within the outer ambit of the First Amendment's Protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 1391, 146 L.Ed.2d 265 (2000); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). Further, there is a strong presumption of irreparable injury to the plaintiffs if an injunction is not issued, when a case involves infringement on First Amendment rights. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Thus, the court finds that the plaintiffs and intervenors have shown that they would suffer irreparable injury if the injunction were not granted.

### C. *Threatened Harm to the City*

■ The plaintiffs and intervenors have shown that the threatened harm to them—the possible closing of their business and possible infringement upon their first amendment rights—outweighs the harm to the City. The City alleges that there will be potential secondary effects from the granting of an injunction, such as a rise in criminal public lewdness and prostitution. The court, however, agrees with the plaintiffs and intervenors, Motion at 7, that a temporary halt to the license revocations would pose a minimal threat to the City, as it is unlikely that these secondary effects will be significantly realized in the time it will take for this case to proceed to trial. In the meantime, the City may continue to arrest entertainers or anyone else who violates state law at the plaintiffs' and intervenors' establishments.

### D. *Public Interest*

■ The court finds that the plaintiffs have shown that granting the injunction will not disserve the public interest. The City argues that the public interest will be disserved because the City has an important governmental interest in ensuring that sexual criminal conduct does not occur on the premises of a sexually oriented business, and that if this injunction is granted, the owners and operators of sexually oriented businesses would be free to permit this conduct to occur on their premises without any threat of losing their sexually oriented business license. The court disagrees. As discussed above, the granting of a preliminary injunction does not prevent the police from arresting those who violate the City Code or state law by engaging in criminal activity at the establishments owned and/or operated by the plaintiffs and intervenors. Nor has it been shown that in the short period between the granting of an injunction and a trial in this case, the number of sexually deviant crimes is likely to increase.

### III. *CONCLUSION*

After careful consideration, the court finds that the plaintiffs and intervenors have met their burden of proof on their motion for a preliminary injunction. Therefore, their motion is **GRANTED.**

Within ten days of this date, counsel for the plaintiffs and intervenors shall submit a proposed order of preliminary injunction that conforms to this memorandum order.

**SO ORDERED.**